OPINION
{¶ 1} Plaintiff-appellant, Chase Manhattan Bank ("Chase"), appeals the decision of the Butler County Court of Common Pleas finding that Chase's mortgage interest is subordinate to the mortgage interests of defendants-appellees, CW Asset Acquisition LLC ("CW") and PNC Bank ("PNC"). We affirm the common pleas court's decision.
 {¶ 2} At issue in this case is the priority of three mortgages. All three mortgages involve real property located at 10049 Sonya Lane, Cincinnati, Ohio, owned by defendants, Gerald and Deloris Parker ("the Parkers"). PNC is the holder of the first mortgage, a $31,000 open-end mortgage recorded in April 1994. Citizens Federal Bank ("Citizens Federal") was the initial holder of the second mortgage, a $15,000 open-end mortgage recorded in September 1995. CW subsequently acquired that mortgage by assignment. Congressional Funding, Inc. ("Congressional Funding") was the initial holder of the third mortgage, a $272,000 open-end mortgage recorded in September 1996. That mortgage was subsequently assigned to Chase.
 {¶ 3} Midwest Abstract Company ("Midwest") handled the closing for Congressional Funding's September 1996 mortgage. Acting on Congressional Funding's behalf, Midwest forwarded a check to PNC in the amount of $31,450 for the purpose of paying off PNC's April 1994 mortgage. Midwest also forwarded a check in the amount of $14,484.16 to Citizens Federal for the purpose of paying off the September 1995 mortgage. While it is undisputed that Midwest paid off the PNC and Citizens Federal mortgages, the parties dispute whether Midwest sufficiently instructed PNC and Citizens Federal to release the mortgages. PNC and Citizens Federal did not release the mortgages, and the Parkers continued to borrow from their open-end loan accounts with PNC and Citizens Federal. The Parkers subsequently defaulted on their obligation to Chase, as well as their obligations to PNC and Citizens Federal.
 {¶ 4} In September 2001, Chase filed a foreclosure action in the common pleas court. In December 2001, PNC filed a foreclosure action in the common pleas court. CW was named as a party in both actions and asserted that it had an interest subordinate to PNC's interest, but superior to Chase's interest.
 {¶ 5} The court consolidated the two foreclosure actions. As the facts of the case were not in dispute, the case was submitted to the common pleas court for decision. The court determined that Chase's interest was subordinate to CW's interest, which was subordinate to PNC's interest. Chase now appeals, assigning three errors. Because Chase's first two assignments of error are closely related, we will address them together.
 {¶ 6} Assignment of Error No. 1:
 {¶ 7} "The open-end mortgages are junior in priority pursuant to Ohio Revised Code 1321.58(f)."
 {¶ 8} Assignment of Error No. 2:
 {¶ 9} "Ohio revised code 1349.20 permits midwest abstract to send the closing letter required by Ohio Revised Code 1321.58-(F)."
 {¶ 10} The common pleas court determined that Chase "fail[ed] to satisfy the requirements of R.C. 5301.232," and therefore failed to protect its interest under that statute. Chase does not contest that conclusion. Rather, Chase argues that, regardless of R.C. 5301.232, its mortgage should have been deemed the superior interest pursuant to R.C.1321.58(F). Chase argues that, pursuant to R.C. 1321.58(F), Midwest properly instructed PNC and Citizens Federal to close the Parkers' open-end loan accounts and release the April 1994 and September 1995 mortgages. Therefore, Chase argues, because the accounts should have been terminated and the mortgages released, the Parkers should never have been able to borrow on the accounts.
 {¶ 11} R.C. 1321.58(F) reads as follows: "Whenever there is no unpaid balance in an open-end loan account, the account may be terminated by written notice, by the borrower or the registrant, to the other party. If a registrant has taken a mortgage on real property to secure the open-end loan, the registrant shall deliver, within thirty days following termination of the account, a release of the mortgage to the borrower."
 {¶ 12} The issue with regard to R.C. 1321.58(F) is whether "written notice" was given to PNC and Citizens Federal to terminate the open-end loan accounts and release the April 1994 and September 1995 mortgages. Chase argues that Midwest, acting as an agent of the Parkers (the borrowers), gave written notice to PNC and Citizens Federal in separate letters dated September 3, 1996. In those letters, Midwest stated that a check representing the final mortgage pay-off was enclosed, and indicated the volume and page of the mortgage to be paid off. The letters also stated that Midwest "would appreciate a copy of * * * [the] recorded and cancelled satisfaction release of mortgage."
 {¶ 13} We disagree with Chase's argument. The letters from Midwest to PNC and Citizens Federal do not constitute "written notice" within the meaning of R.C. 1321.58(F). First, the letters do not explicitly request the termination of the Parkers' open-end loan accounts. Further, there is no indication in the letters that Midwest was acting as the Parkers' agent and was authorized to request that their accounts be terminated. As the common pleas court points out, there is no evidence in the record of a written agreement between Midwest and the Parkers authorizing Midwest to request the termination of the accounts. Without such a showing of agency, we cannot find a valid request from the borrower that the accounts be closed pursuant to R.C. 1321.58(F). See Bank of New York v.Fifth Third Bank of Cent. Ohio, Delaware App. No. 01 CAE 03005, 2002-Ohio-352, 2002 WL 121925, at *4.
 {¶ 14} Chase argues that the settlement statement gave Midwest the authority to request the termination of the accounts. However, the settlement statement only indicates that Midwest would forward checks to PNC and Citizens Federal to "payoff" the April 1994 and September 1995 mortgages. There is no indication from the settlement statement that Midwest would request the termination of the open-end loan accounts.
 {¶ 15} We are also not persuaded by Chase's argument based on R.C.1349.20 and set forth in Chase's second assignment of error. R.C. 1349.20
defines "escrow agent" and "escrow transaction." We find nothing in that section giving Midwest, as the "escrow agent," the inherent authority to request the termination of the open-end loan accounts, absent instructions from the Parkers to do so.
 {¶ 16} Accordingly, we overrule Chase's first two assignments of error. Contrary to Chase's argument, the mortgages held by PNC and CW should not have been released pursuant to R.C. 1321.58(F). Because the mortgages held by PNC and CW were never released and were recorded prior to the recording of Chase's mortgage, the mortgages are superior interests to the interest of Chase. See R.C. 5301.23(A). The common pleas court did not err in so determining.
 {¶ 17} Assignment of Error No. 3:
 {¶ 18} "Appellant chase has priority over the citizens federal (CW Asset Acquisition) open-end mortgage due to the citizens federal payoff statement and estoppel."
 {¶ 19} Chase argues that because Citizens Federal cashed the payoff check, which included a fourteen-dollar lien release fee specified in the payoff statement, Citizens Federal should have been estopped from claiming a superior interest. Chase essentially argues that Citizens Federal's actions induced Congressional Funding to believe that the September 1995 mortgage had been released.
 {¶ 20} In order to show a prima facie case of equitable estoppel, one must show (1) a factual representation, (2) that is misleading, (3) that induces actual reliance that is reasonable and in good faith, and (4) that causes detriment to the relying party. See Heskett v. Paulig
(1999), 131 Ohio App.3d 221, 226-227.
 {¶ 21} The record does not show that Citizens Federal ever stated to Congressional Funding or its agents that the September 1995 mortgage had been released or that the Parkers' open-end loan account had been terminated. Further, Citizens Federal had indicated to Midwest that it "must be notified in writing of the closing of the account." Midwest never explicitly instructed Citizens Federal to close the Parkers' account. However, Citizens Federal did cash the payoff check, which included the fourteen-dollar lien release fee specified in the payoff statement. The cashing of that check coupled with the specific inclusion of the lien release fee in the payoff statement could conceivably have led Congressional Funding to believe that the mortgage had been released.
 {¶ 22} Nevertheless, Chase cannot establish equitable estoppel because it cannot show that reliance on Citizens Federal's actions was reasonable. It was not reasonable for Congressional Funding to interpret Citizens Federal's cashing of the payoff check as a conclusive indication that the mortgage had been released. It was Congressional Funding's responsibility to ensure that the September 1995 mortgage had actually been released prior to entering into the September 1996 mortgage. "When the secured party does not protect its own interest by ensuring that the first loan is canceled before extending credit, * * * [the court] will not invoke equity to compensate for shortcomings easily avoided." Bank ofNew York, 2002-Ohio-352, 2002 WL 121925, at *4. Therefore, because Chase cannot establish equitable estoppel, we overrule Chase's third and final assignment of error.
 {¶ 23} Judgment affirmed.
Young, P.J., and Valen, J., concur.