OPINION
{¶ 1} Defendant-appellant, Union Savings Bank ("USB"), appeals the decision of the Butler County Court of Common Pleas finding that USB's mortgage interest is subordinate to *Page 2 
the mortgage interest of plaintiff-appellee, Fifth Third Bank ("Fifth Third"). We affirm the common pleas court's decision.
 {¶ 2} On December 9, 1997, defendants, Joseph and Bobbi Jo Lorance ("the Lorances"), entered into an equity line of credit agreement with Fifth Third. Under the terms of the agreement, Fifth Third agreed to extend credit to the Lorances up to $50,000, in return for an open-end mortgage on the Lorances' property located at 1711 Thall Drive, Hamilton, Ohio. The mortgage was recorded at the Butler County Recorder's Office on December 30, 1997.
 {¶ 3} On March 24, 1999, the Lorances entered into a note and mortgage with USB in the amount of $202,500. That mortgage was recorded on April 7, 1999.
 {¶ 4} In September 2002, the Lorances approached USB with the possibility of refinancing both their equity line of credit with Fifth Third and their existing mortgage with USB. Prior to closing on this new loan, USB requested from Fifth Third a letter stating the full payoff amount of the Lorances' credit line. On September 4, 2002, Fifth Third sent a payoff letter to the Lorances notifying them of the full payoff figure. In pertinent part, the payoff letter states:
 {¶ 5} "The payoff for the above referenced account, as of today is $48,814.84. Interest will continue to accrue at $6.35 each day. If payment is not received by 09/25/2002, late charges may be assessed to the account. This payoff statement is subject to the assumption that any recent drafts, advances, or checks have cleared the bank. In the event that any payment is returned to us unpaid for any reason, the above mentioned payoff will become invalid.
 {¶ 6} "In order to close an Equity Line account, a written request, signed by you, the customer, must be received with the payoff. Without such request, payment will be applied, but the account will not be closed and the collateral will not be released. Please sign below *Page 3 
and return this form along with your payoff if you wish to close your Equity Line."
 {¶ 7} On September 6, the Lorances signed an adjustable rate promissory note in favor of USB in the amount of $247,300. The Lorances also signed a notice to cancel, which stated in pertinent part:
 {¶ 8} "With the enclosed check for payoff of our mortgage loan, this letter is to serve as notice that I/we desire and direct you to cancel the recorded mortgage; this statement applies regardless of whether or not I/we have an equity line mortgage. If this mortgage is, in fact, securing a line of credit, you are also directed to terminate the line of credit at this time."
 {¶ 9} On September 11, the closing agent for USB sent to Fifth Third the Lorances' notice to cancel and payoff check for $48,871.99. The new USB mortgage was also recorded the same day. On September 9, however, two days before USB sent the notice to Fifth Third, the Lorances took an advance of $1,000 on their Fifth Third equity credit line account.
 {¶ 10} Fifth Third negotiated the payoff check from USB on September 12 and applied the proceeds to the equity credit line account. Because the attempted payoff left a balance on the credit line, Fifth Third neither terminated the credit line nor released its mortgage lien on the Lorances' property. The Lorances subsequently took additional advances, totaling $48,505.04 plus interest as of November 2005.
 {¶ 11} On November 23, 2005, Fifth Third filed its foreclosure complaint, which stated that the Lorances were in default under the terms and conditions of the note. As a result, Fifth Third requested that its mortgage on the Lorances' real estate be found to be a valid first lien and that the mortgage be foreclosed. Fifth Third also named USB, the county treasurer, and an additional third party as defendants.
 {¶ 12} USB and Fifth Third filed cross-motions for summary judgment on the issue of priority of their respective mortgage liens. In September 2006, the trial court granted Fifth *Page 4 
Third's motion for summary judgment, holding that its mortgage lien is superior to USB's mortgage lien. USB timely appealed, raising one assignment of error.
 {¶ 13} Assignment of Error No. 1:
 {¶ 14} "THE TRIAL COURT ERRED IN GRANTING THE MOTION FOR SUMMARY JUDGMENT OF APPELLEE, FIFTH THIRD BANK."
 {¶ 15} We review a trial court's decision granting summary judgment de novo. Burgess v. Tackas (1998), 125 Ohio App.3d 294, 296. Summary judgment is appropriate "when looking at the evidence as a whole, (1) no genuine issue of material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence, construed most strongly in favor of the nonmoving party, that reasonable minds could only conclude in favor of the moving party." Horton v. Harwick Chem. Corp., 73 Ohio St.3d 679, 1995-Ohio-286, paragraph three of the syllabus; Civ.R. 56. The moving party "bears the initial burden of informing the trial court of the basis for the motion, and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on the essential element(s) of the nonmoving party's claims." Dresher v. Burt, 75 Ohio St.3d 280,293, 1996-Ohio-107.
 {¶ 16} In its sole assignment of error, USB presents two issues for review. USB first argues that its 2002 mortgage is entitled to priority over Fifth Third's 1997 mortgage under the doctrine of equitable subrogation because USB followed Fifth Third's instructions on closing the account, and Fifth Third negligently failed to close the Lorances' equity credit line.
 {¶ 17} R.C. 5301.23 provides that the first mortgage recorded "shall have preference." The doctrine of equitable subrogation, however, can defeat this "first in time, first in right" statutory principle.Chase Manhattan Bank v. Westin, Clermont App. No. CA2002-12-099, 2003-Ohio-5112, at ¶ 8, citing First Union National Bank v. Harmon, Franklin App. No. 02AP-77, 2002-Ohio-4446, at ¶ 17. "It is essentially a theory of unjust enrichment." Id., citing Ridge *Page 5 Tool Co. v. Silva (1986), 33 Ohio App.3d 260, 261.
 {¶ 18} Equitable subrogation "arises by operation of law when one having a liability or right or a fiduciary relation in the premises pays a debt due by another under such circumstances that he is in equity entitled to the security or obligation held by the creditor whom he has paid." Federal Union Life Ins. Co. v. Deitsch (1934), 127 Ohio St. 505,510. The doctrine of equitable subrogation serves to prevent fraud and provide relief against mistakes. State v. Jones (1980),61 Ohio St.2d 99, 102. When invoking the doctrine, a party's "equity must be strong and his case clear." Id., citing Harshman v. Harshman (App. 1941), 35 Ohio Law Abs. 633, 636.
 {¶ 19} USB's argument that it deserves to replace Fifth Third as first lienholder must fail for lack of any evidence that Fifth Third created some injustice that would warrant remuneration under the doctrine of equitable subrogation. Our previous decisions addressing the issue have followed the principle that courts should not apply equitable subrogation to defeat statutory lien priorities where a lender could have avoided the predicament about which it complains. SeeHuntington Nat'l. Bank v. McCallister (Feb. 18, 1997), Butler App. No. CA96-07-144; Westin at ¶ 12-14.
 {¶ 20} In Huntington, a creditor who paid off three mortgage liens, one of which was a credit line, relied upon the incorrect and uninformed assumption that the credit line was terminated upon its payoff. We found that the new creditor was not entitled to advance to the first lienholder position, ahead of the credit line lienholder, because the new creditor could have protected its own interests by ensuring that its attempted payoff terminated the credit line.
 {¶ 21} Similarly, in Westin, the creditor was assigned a mortgage granted by the homeowners for a loan. At the time, there were four existing mortgage liens on the homeowners' property, each of which secured a separate loan. Loans 1 and 2 were *Page 6 
subordinated to Loan 3 when that lien was filed for record. The creditor paid off Loans 3 and 4, and the corresponding liens were released. The creditor, however, failed to extinguish Loans 1 and 2 and their corresponding liens, and asked the court to invoke equitable subrogation and give its lien priority. In that case, we declined to apply equitable subrogation and held that the creditor was in complete control of the loan process and could have protected its own interests.
 {¶ 22} Although USB attempts to distinguish its facts from our previous decisions, its assertions are unpersuasive. The Lorances executed a notice to cancel on September 6, 2002. On September 9, they obtained an advance of $1,000. On September 11, USB sent its attempted payoff check with the Lorances' notice to cancel, but did not include the additional $1,000 obtained by the Lorances from the equity credit line. Thus, the check from USB was insufficient to constitute a payoff. In Fifth Third's letter providing instructions for payoff, it stated that in order to close the equity line of credit, the written request "must be received with the payoff." Because the check was not a payoff, Fifth Third did not close the account, which still held a balance.
 {¶ 23} Furthermore, Fifth Third was not required to release its mortgage lien while the Lorances owed money on the equity credit line. Pursuant to R.C. 5301.232(B), a mortgage is a lien on the premises "for the full amount of the total unpaid indebtedness, including the unpaid balances of such advances that are made under such mortgage, plus interest thereon, regardless of the time when such advances are made."
 {¶ 24} As the trial court discussed, USB could have taken several different actions to ensure that its mortgage held the first lien position, the easiest of which would have been to confirm that the equity credit line had been completely paid off and closed. Because we agree with the trial court's decision that USB was in complete control of the loan process and could have protected its own interests, we find USB's first issue presented for review not well-taken. *Page 7 
 {¶ 25} In its second issue presented for review, USB argues that "based on the doctrine of equitable estoppel, the 2002 mortgage of [USB] is entitled to priority over the 1997 mortgage of [Fifth Third]."
 {¶ 26} In order to establish a claim for equitable estoppel, USB must show that (1) Fifth Third made a factual representation, (2) that is misleading, (3) that induces actual reliance that is reasonable and in good faith, and (4) that causes detriment to the relying party.Chase Manhattan Bank v. Parker, Butler App. No. CA2003-11-299,2005-Ohio-1801, at ¶ 20, citing Heskett v. Paulig (1999),131 Ohio App.3d 221, 226-27. Estoppel is not available "where the circumstances surrounding the transaction are sufficient to put a person of ordinary prudence on inquiry which would have disclosed the facts." Pedler v.Aetna Life Ins. Co. (1986), 23 Ohio St.3d 7, 11, quoting 42 Ohio Jurisprudence 3d (1983) 109-110, Estoppel and Waiver, Section 66.
 {¶ 27} USB asserts that Fifth Third should be estopped from asserting its first-priority mortgage because Fifth Third represented in its September 4 payoff letter to the Lorances that it would close the equity credit line and release its mortgage upon receipt of the payoff. The September 4 letter, however, provides that the payoff statement "is subject to the assumption that any recent drafts, advances, or checks have cleared the bank." The letter also states that Fifth Third will not close the credit equity line without receiving the written request with the payoff check. We agree with the trial court's findings that (1) the representations were made to the Lorances, not USB and (2) the representations contained in the September 4 letter were not misleading. Also, as previously noted, Fifth Third never received a payoff of the balance of the equity credit line, and R.C. 5301.232(B) expressly provides that the lien secured by a mortgage is valid until the indebtedness is paid in full.
 {¶ 28} We also agree with the trial court's holding that USB's reliance on the *Page 8 
September 4 letter was not reasonable. It is not reasonable for USB to assume that by sending its attempted payoff check along with a written statement requesting the account be closed, the mortgage had been released without ensuring that it had fulfilled all of the requirements for payoff. See Chase Manhattan Bank v. Parker, Butler App. No. CA2003-11-299, 2005-Ohio-1801, at ¶ 22. In Parker, we considered whether it was reasonable for a lender to assume another lender's negotiation of a payoff check was an indication that the mortgage had been released. We held that such reliance was not reasonable because it is the responsibility of the lender seeking priority lien status to ensure that other liens are released.
 {¶ 29} The facts of this case fall within our disposition ofParker. Because USB failed to protect its own interest by ensuring that Fifth Third's loan was canceled before extending credit to the Lorances, we "will not invoke equity to compensate for shortcomings easily avoided." Parker at ¶ 22, quoting Bank of New York v. Fifth Third Bankof Cent. Ohio, Delaware App. No. 01 CAE 03005, 2002-Ohio-352. Therefore, because USB cannot establish equitable estoppel, we find its second issue presented for review not well-taken.
 {¶ 30} Accordingly, because USB failed to meet the required elements of both equitable subrogation and equitable estoppel, USB's sole assignment of error is overruled.
 {¶ 31} Judgment affirmed.
 YOUNG, P.J., and WALSH, J., concur. *Page 1