Stephenson, J.
 

 The issue presented here is between the Federal Union Life Insurance Company and Maggie Kerbel, neither of whom appears to be satisfied with the judgment and decree of the Court of Appeals. While Maggie Kerbel’s dissatisfaction is expressed in her brief, she has filed no cross-petition in error, and we can offer her no condolence.
 

 The Federal Union Life Insurance Company claims priority in the Stanton avenue property to the extent of $8,978.99, the amount it paid to the Western Bank & Trust Company to satisfy its first mortgage on the Stanton avenue property, by right of subrogation.
 

 This issue was made by the pleadings, and evidence was introduced to support it.
 

 In one of its findings of fact, the Court of Appeals found “that said Mary A. Cornell made ah application in writing to borrow $27,000 from the defendant, The Federal Union Life Insurance Company, and agreed in said application to give as security for said loan a
 
 first mortgage”
 
 on the Stanton avenue and Lincoln avenue properties.
 

 It is self-evident that the Federal Union Life Insurance Company could get a first mortgage in one way
 
 *509
 
 only, to wit, to satisfy existing mortgages out of the loan. It did this only to awaken to the fact that under our recording acts it had- been “nosed out” on the Stanton avenue property. Maggie Kerbel had beaten it to the record with her $10,000 mortgage. Of course, her mortgage on the Lincoln avenue property was nil, as the mortgagor, Mary Cornell, had no title to this property when she executed the mortgage.
 

 We have no knowledge of Mary Cornell, other than that she was the niece of Maggie Kerbel, and a “rolling stone.” The record does not indicate that she ‘ ‘ gathered any moss, ’ ’ but it divulges indubitably that she became quite smooth. When the “smoke cleared away,” Mary was gone; and counsel inform us in open court that she is now a fugitive from justice.
 

 Whatever Mary Cornell’s disposition may have been, it could not deprive her of the right to contract — if it did impair her contractual obligations. The fact that this niece fleeced her aunt out of $10,000, probably all she had, is most, lamentable. We assume that this is all she had, on the ground that had she been possessed of more Mary would have gotten it. This court is human and appreciates that a grievous wrong has been done Maggie Kerbel; but can it help her, even under the beneficent principles of equity?
 

 The right of subrogation herein involved has its foundation in contract.
 

 There is much logic and apparent fairness in the reasoning of the Court of Appeals, to the effect that in this transaction a purchasing fund was created; that Maggie Kerbel was a contributor to this fund and as such contributor her rights rose just as high as those of the Federal Union Life Insurance Company, which was nothing more than a contributor.
 

 Along this line of reasoning that court found the equities between the Federal Union Life Insurance Company and Maggie Kerbel equal, and' established the priorities in accordance with the law established by
 
 *510
 
 our recording acts. Our recording acts were enacted for the purpose of giving notice to the world of the condition of title to real estate, and under such acts it is- the law that, everything else being equal, he who first gets to the record with his lien has the first and best lien. Under the facts and circumstances of this case, our recording acts create no barrier to the application of the doctrine of subrogation.
 

 There is no question that the Federal Union Life Insurance Company granted the loan to Mary Cornell upon consideration that it be given a first mortgage on both her properties. There is no question that its money satisfied the first mortgages.
 

 Maggie Kerbel’s loan, as appears from her testimony in the record, notwithstanding she was given a mortgage, was personal. In other words, she just turned the money over to Mary Cornell to do as she pleased with it. Quite true, Maggie Kerbel was informed that her money would be applied to the purchase of the Lincoln avenue property; but nowhere in the record do we find that she attached any particular significance to that fact. The fact that her money was to be applied toward the purchase of the Lincoln avenue property did not move her to part with it. Mary Cornell just naturally talked her out of it.
 

 “Subrogation,” in its broadest sense, is the substitution of one person in the place of another with reference to a lawful claim or right. Our modern law has divided subrogation into two classes: Legal subrogation and conventional subrogation.
 

 “Legal subrogation” arises by operation of law when one having a liability or right or a fiduciary relation in the premises pays a debt due by another under such circumstances that he is in equity entitled to the security or obligation held by the creditor whom he has paid.
 

 “Conventional subrogation” depends upon a lawful contract, and occurs where one having no interest in
 
 *511
 
 or relation to the matter pays the debt of another and by agreement is entitled to the securities and rights of the creditor so paid. 25 Ruling Case Law, Section 1, page 1312.
 

 If the Federal Union Life Insurance Company has the right of subrogation herein, it is a conventional right. It has been held that a third person loaning money for the express purpose of paying the purchase price of land sold another is entitled to be subrogated to the right of the vendor to an equitable lien on the land for the purchase money. The application of this doctrine might be' somewhat complicated in Ohio by reason of Section 8543-1, General Code, which provides as follows: “As between the vendor and vendee of land the vendor shall have a lien for so much of the purchase money as remains unpaid. But such lien shall not be effective as against a purchaser, mortgagee, judgment creditor, or other encumbrancer, unless there be a recital or a reservation of the Een in the deed, or in some instrument of record executed with the same formaEties as are required for the execution of deeds and mortgages of land * *
 

 The extension of this equity to a third person is, however, strictly confined to those who furnish or advance the purchase money to the purchaser in .such a manner that they can be said either to have paid it to the vendor personally, or caused it to be paid on behalf of and for the benefit of the purchaser, and to this extent they become parties to the transaction. It must not be a general loan to be used by the purchaser to pay the consideration of the purchase, or to be used for any other purpose at his pleasure.
 

 In such case,
 
 the simple fact that the money ccm he traced into the land as having been paid hy the purchaser to the vendor as the whole or a part of the purchase money gives the person who loomed it no such right.
 
 25 Ruling Case Law, Section 34, page 1351, citing
 
 Austin
 
 v.
 
 Underwood,
 
 37 Ill., 438, 87 Am. Dec.,
 
 *512
 
 254;
 
 Dreese
 
 v.
 
 Myers,
 
 52 Kan., 126, 34 P., 349, 39 Am. St. Rep., 336; and notes 99 Am. St. Rep., 527, and 37 L. R. A. (N. S.), 1206.
 

 Maggie Kerbel’s money did go into the Stanton avenue property, but when that is said, all is said. Her loan to Mary Cornell was a general loan. Maggie Kerbel is not hurt by reason of the fact that the Federal Union Life Insurance Company is subrogated to the rights of the Western Bank
 
 &
 
 Trust Company in the Stanton avenue property. She could not have secured priority over the first mortgage held by the Western Bank & Trust Company on the Stanton avenue property, and when the Federal Union Life Insurance Company satisfied this mortgage and stepped into its shoes, the same old lien remained on the property, from the viewpoint of the chancellor. Maggie Kerbel does not, as a matter of fact, lose one penny that she would not have lost had this latter transaction not taken place. Her rights against Mary Cornell, against whom she can proceed if she is ever able to locate her, are in no wise jeopardized. No greater burden was placed on Maggie Kerbel than she would have borne if the old mortgage on the Stanton avenue property had not been released. This case comes squarely within the purview of the case of
 
 Straman, Admr.,
 
 v.
 
 Rechtine,
 
 58 Ohio St., 443, 51 N. E., 44, which is approved and followed.
 

 Our recording acts in no wise affect the equities in this case. While this court has not, so far as we are advised, passed squarely on this proposition, we regard it as fundamental so far as this case is concerned.
 

 We find that the Federal Union Life Insurance Company should be and is as a matter of equity subrogated to all the original rights of the Western Bank & Trust Company in the Stanton avenue property and to all the original rights of the Title Guarantee &
 
 *513
 
 Trust Company in the Lincoln avenue property. The judgment of the Court of Appeals is hereby reversed.
 

 Judgment reversed.
 

 Weygandt, C. J., Allen, Jones, Matthias, Beyis and Zimmerman, JJ., concur.