STATE SAVINGS BANK, Appellant,

v.

GUNTHER et al.; Coots et al., Appellees.

[Cite as *State Sav. Bank v. Gunther* (1998), 127 Ohio App.3d 338.]

Court of Appeals of Ohio,
Third District, Union County.

Nos. 14–97–33 and 14–97–41.

Decided April 23, 1998.

*Allen, Yurasek & Merklin* and *Jeffrey A. Merklin; Maguire & Schneider* and *Karl H. Schneider,* for appellant.

*Emens, Kegler, Brown, Hill & Ritter* and *Robin Smith Hoke,* for appellees.

---

SHAW, Presiding Judge.

Plaintiff-appellant, State Savings Bank, appeals the judgment of the Court of Common Pleas of Union County that granted summary judgment to defendants-appellees Kenneth R. Coots and Barbara J. Coots.

On September 16, 1996, State Savings filed a complaint instituting foreclosure proceedings against Susan A. Gunther. The parties named in the complaint were Gunther, the bankruptcy trustee of her estate, the Cootses, a party holding a mechanic's lien on the property, and the Union County Treasurer. The complaint was precipitated by Gunther's default on the State Savings loan and her filing of a petition under Chapter 7 of the United States Bankruptcy Code. The home subject to the mortgage was located in Plain City, Ohio and had been purchased by Gunther from the Cootses. At the same time of the filing of the complaint, State Savings also propounded requests for admissions and interrogatories upon the Cootses.

An answer was filed by the Cootses on December 31, 1996. At this time, responses were also given to the requests for admissions and interrogatories. However, an answer was never filed by Gunther, the trustee, or the mechanic's lien holder. Accordingly, a default judgment was granted to State Savings and the only parties with claims to be resolved were State Savings and the Cootses.

On May 1, 1997, State Savings and the Cootses filed motions for summary judgment. On August 12, 1997, trial court granted the Cootses' motion. In its accompanying entry, the court held that because the Cootses' mortgage was recorded first, their interest in the property was superior to State Savings'. State Savings filed a notice of appeal challenging this judgment entry on September 8, 1997. This forms the basis for case No. 14–97–33.

In continued support of its position, on September 8, 1997, State Savings filed a motion requesting the trial court to reconsider the August ruling and/or to relieve State Savings from that judgment pursuant to Civ.R. 60(B). This motion was denied two days later. Within the proper time limits, State Savings appealed that decision, thereby creating case No. 14–97–41. These causes were consolidated for the purposes of oral argument on December 2, 1997.

The following are the assignments of error put forth by State Savings in case No. 14–97–41:

"I. The trial court erred by failing to make a determination as to whether its September 10, 1997 journal entry constituted a final, appealable order; such a determination, therefore, still needs to be made.

"II. The trial court erred, abused its discretion and committed reversible error when it granted summary judgment to Defendants Coots and when it overruled Plaintiff Bank's motion for reconsideration of and/or relief from said summary judgment, since there were genuine issues of material fact set forth in the affidavits of the loan documents.

"III. The trial court erred, abused its discretion and committed reversible error when it granted summary judgment to Defendants Coots and when it overruled Plaintiff Bank's motion for reconsideration of and/or relief from said summary judgment, since Defendants Coots' motion for summary judgment violated and reneged on the affidavit/agreement regarding lien priority which said defendants gave to Plaintiff Bank, sought a windfall/double recovery by ignoring the cash and credits which said defendants certified they received at closing, and violated the principles of 'purchase money mortgages.'

"IV. The trial court erred, abused its discretion and committed reversible error when it granted Defendant Coots' motion for summary judgment on the issue of lien priority and when it overruled Plaintiff Bank's motion for reconsideration of and/or relief from said summary judgment, since Plaintiff Bank was entitled to be subrogated to the lien it paid off at the November 10, 1993 closing and therefore should have been given priority for same over the November 18, 1993 mortgage lien of Defendant Coots."

These assignments of error would be identical to those listed in case No. 14–97–33, except for the phrase "motion for reconsideration of and/or relief from said summary judgment." Consequently, because both appeals arise from the same litigation, involve similar facts, and present comparable issues, only one opinion will be rendered. Further, the majority of State Savings' assignments of error address the merits of the trial court's decision, questioning the court's ruling on the issues of priority mortgage holder, equitable subordination, and fraud. Accordingly, the second, third, and fourth assignments of error will be addressed together.

This matter is a review of the trial court's grant of a summary judgment motion. In reviewing such a motion, an appeals court must apply the same standard as that used by the trial court. *Lorain Natl. Bank v. Saratoga Apts.* (1989), 61 Ohio App.3d 127, 129, 572 N.E.2d 198, 199–200. Thus, summary judgment will be granted when no genuine issues of material fact remain to be litigated and, after viewing the evidence most strongly in favor of the nonmoving party, reasonable minds can only conclude that the moving party is entitled to

judgment as a matter of law. Civ.R. 56(C). Summary judgment should be awarded with caution, with the trial court resolving doubts and construing evidence in favor of the nonmoving party. *Murphy v. Reynoldsburg* (1992), 65 Ohio St.3d 356, 360, 604 N.E.2d 138, 141.

Further, when a party seeking summary judgment claims that the nonmoving party has no evidence to establish an essential element of its claim, the moving party must first satisfy an initial burden of providing some support within the record that comports with the evidentiary requirements of Civ.R. 56(C). *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 293, 662 N.E.2d 264, 273–274. If the moving party fails to meet this burden, summary judgment is improper. On the other hand, if the moving party satisfies its burden, the nonmoving party then has a reciprocal burden, as detailed in Civ.R. 56(E), "to set forth specific facts showing that there is a genuine issue for trial and, if the nonmovant does not so respond, summary judgment, if appropriate, shall be entered against the nonmoving party." *Id.* at 293, 662 N.E.2d at 274 Thus, as parties that independently moved for summary judgment, State Savings and the Cootses were required to produce some evidence on the issue of priority mortgage holder to carry their burdens. This evidence could take the form of pleadings, answers to written interrogatories, depositions, affidavits, transcripts, and written stipulations. Civ.R. 56(C).

Our review of the record shows that State Savings, as either the moving or nonmoving party, failed to satisfy its burden that a genuine issue of material fact existed as to which party possessed the paramount mortgage interest. The issue of designating the priority mortgage holder was clearly before the trial court. State Savings' motion for summary judgment specifically requested "adjudication as to the priority of the mortgage deeds held by State Savings and that of [the Cootses]." The Cootses' summary judgment motion also asserted that they were entitled to an entry of summary judgment "affirming the validity and priority of [the Cootses'] Mortgage to that of [State Savings]."

As evidence to support its position as priority mortgage holder, the Cootses produced a mortgage and security agreement file-stamped as recorded prior to State Savings' interest in Gunther's house. This interest was recorded on November 18, 1993, eight days after the formal closing transaction between Coots, Gunther, and State Savings. However, the file stamp on State Savings' promissory note and mortgage deed to the property indicates that recording of this interest occurred on August 10, 1994, nearly nine months subsequent to the Cootses' recording.

Upon a review of the record, we find that State Savings failed to produce any evidence that explains or demonstrates a genuine issue of material fact as to the

eight-month delay in its recording of its own mortgage and promissory note. In other words, State Savings failed to comply with the requirements of *Dresher, supra.* Thus, the trial court did not err in its conclusion that the Cootses possessed the mortgage interest with priority.

■ State Savings next asserts a fraud claim against the Cootses. Specifically, State Savings claims that had it known that Gunther's entire down payment was in the form of a loan from the Cootses, the loan by State Savings on the remaining eighty percent of the house value would not have been approved. The facts asserted to support this argument begin with Gunther's execution on September 27, 1993, of a real estate purchase contract for the Cootses' home. The purchase price was $198,000, and the sale was contingent upon Gunther's acquisition of financing from a third party with an eighty-percent loan-to-value ratio. Gunther agreed to this condition, but she also explained to the Cootses that she would be unable to secure the loan down payment of $39,600. In exchange for the Cootses' assistance with the down payment, Gunther agreed to give them a second mortgage on the house. Documentation signed on October 18, 1993, reflected a $39,100 mortgage arrangement between Gunther and the Cootses.

Gunther obtained a loan on the remaining value of the house from State Savings. At the formal closing for the transfer of the Cootses' home to Gunther, a general warranty deed was delivered and a final accounting of the transaction was reflected in a HUD–1 Settlement Statement. This statement was signed by the closing agent, the Cootses, and Gunther. The statement further identified Gunther as borrowing $148,500 from State Savings. This amount was determined by calculating all the credits due to, and debits owed by, Gunther. One of the credits listed was a second mortgage that Gunther apparently granted to the Cootses. The dollar amount noted was $9,900. Debts owed by Gunther included the required down payment of $39,600 and closing costs of $9,845.78. In the end, Gunther owed State Savings $43,214.44 in cash to complete the transaction.

In return for Gunther's purchase of the house, the Cootses received a disbursement of $40,986.15 from State Savings. This amount represented the Cootses' equity in the home, after the subtractions were made for the payment of the Cootses' first and second mortgages and their share of the real estate taxes for the year. Also subtracted were various credits available to Gunther and the apparent $9,900 loan made to her. However, not reflected on the statement was the $39,100 loan the Cootses agreed to give to Gunther in exchange for a mortgage on the house.

■ To maintain a claim of fraud, according to *Burr v. Stark Cty. Bd. of Cty. Commrs.* (1986), 23 Ohio St.3d 69, 23 OBR 200, 491 N.E.2d 1101, paragraph two of the syllabus, a harmed party must show the following:

"(a) a representation or, where there is a duty to disclose, concealment of a fact,

"(b) which is material to the transaction at hand,

"(c) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred,

"(d) with the intent of misleading another into relying upon it,

"(e) justifiable reliance upon the representation or concealment, and

"(f) a resulting injury proximately caused by the reliance."

In this case, State Savings appears to be asserting that the Cootses committed fraud by misrepresenting their financial status and the financial status of Gunther.

However, claims of fraud are subject to certain pleading and notice requirements. For example, Civ.R. 9(B) requires that when averments of fraud are made, "the circumstances constituting fraud * * * shall be stated with particularity." As stated in *Aluminum Line Products Co. v. Brad Smith Roofing Co., Inc.* (1996), 109 Ohio App.3d 246, 259, 671 N.E.2d 1343, 1351:

"The 'circumstances constituting fraud' include the time, place and content of the false representation; the fact represented; the identification of the individual giving the false representation; and the nature of what was obtained or given as a consequence of the fraud."

The purpose of this requirement is to give the defendant sufficient notice of that of which the plaintiff complains, so that an effective response and defense may be prepared. *Baker v. Conlan* (1990), 66 Ohio App.3d 454, 458, 585 N.E.2d 543, 545–546.

Upon our review of the record, we find that the original complaint of State Savings did not specifically make allegations of fraud against the Cootses. We reach this conclusion despite the fact that the complaint did appear to take notice of a discrepancy by referring to the $39,100 mortgage the Cootses had obtained from Gunther and mentioning the total value of State Savings' interest in the property. Moreover, we recognize that at the time of the complaint's filing, State Savings also propounded requests for admissions and interrogatories upon the Cootses, questioning the inconsistency between the $39,100 mortgage and the $9,900 second mortgage listed on the settlement statement. Nonetheless, the Cootses' answer and replies to the admissions and interrogatories directly responded to State Savings' concerns. As a result, State Savings possessed all the relevant information for pursuit of its fraud claim at the time the Cootses filed their answer and responses to the request for admissions and interrogatories.

Yet no amended complaint was filed at this time and specific allegations of fraud did not appear until five months later in State Savings' motion for summary judgment. At that time, the argument put forth by State Savings was as follows:

"Coots is estopped from claiming the priority of the November 18, 1993 mortgage, since Coots has unclean hands and falsely represented the receipt and distribution of monies of the HUD–1 [the settlement statement]."

State Savings further elaborated on this argument by detailing the "circumstances constituting fraud" in various affidavits attached to its motion for summary judgment.

State Savings' eventual motion requesting permission to file an amended complaint was not made until October 2, 1997. However, this was after the trial judge had denied State Savings' summary judgment motion and motion for reconsideration/relief from judgment, and even after State Savings had appealed both rulings to this court. Thus, although leave of court is freely given to amend pleadings, Civ.R. 15(A), and although State Savings' motion to amend was apparently granted by the trial court, our determination is that State Savings was clearly dilatory in its attempt to preserve its claim. In short, it is our conclusion that State Savings has waived and relinquished its right to pursue this cause of action against the Cootses. See, *e.g., Evans v. Evans* (1995), 106 Ohio App.3d 551, 553–554, 666 N.E.2d 618, 619–620.

■ State Savings also asserts that the principle of equitable subordination should be applied to ensure that its mortgage interest remains paramount to the Cootses'. State Savings bases this contention on the fact that it, the Cootses, and Gunther intended for the Cootses' mortgage interest to be a second mortgage and not one with priority over State Savings' mortgage. State Savings has presented evidence in the form of affidavits supporting this position.

■ As stated in *State v. Jones* (1980), 61 Ohio St.2d 99, 102, 15 O.O.3d 132, 134, 399 N.E.2d 1215, 1217, equitable subrogation " 'arises by operation of law when one having a liability or right to a fiduciary relation in the premises pays a debt due by another under such circumstances that he is in equity entitled to the security or obligation held by the creditor whom he has paid.' *Federal Union Life Ins Co. v. Deitsch* (1934), 127 Ohio St. 505, 510 [189 N.E. 440, 442–443]." Equitable subrogation has been described as a theory of unjust enrichment, preventing parties from receiving that to which they are not entitled. *Williams v. Erie Ins. Group* (1993), 86 Ohio App.3d 660, 665, 621 N.E.2d 770, 772–773. The right to equitable subrogation depends upon the facts and circumstances of each case, and the basis for the claim must be readily apparent. *Jones, supra,* 61 Ohio St.2d at 102, 15 O.O.3d at 133–134, 399 N.E.2d at 1217–1218.

After reviewing the circumstances of this case, we conclude that there are no genuine issues of material fact regarding which party has the best priority lien on Gunther's house. The situation of State Savings is similar to that of the savings and loan institution in *Jones, id.* at 102–103, 15 O.O.3d at 134, 399 N.E.2d at 1218, whose request for application of equitable subordination was denied with observations adaptable to State Savings:

"[State Savings] was in complete control of the [loan] application,.and, yet, by [its] own actions and inactions, [the Cootses], without acting fraudulently, [were] able to secure priority of [their] claim by filing [eight days after State Savings' closing and nine months prior to State Savings].

"[State Savings] controlled the disbursement of the funds, the filling out of all the forms, the date of the filing and even the hiring of the title company."

Accordingly, the trial court did not err in denying State Savings' request for equitable subrogation on this basis. Moreover, in view of our conclusion that State Savings' fraud claim has been waived, the trial court did not err in refusing to apply the equitable subordination principle for this concern. In sum, State Savings' second, third, and fourth assignments of error as to the issues of priority of the recorded mortgage, fraud, and application of the equitable subordination principle are overruled.

Finally, State Savings' first assignment of error addresses a procedural matter. State Savings asserts that the trial court erred by failing to include in its judgment entry granting summary judgment to the Cootses the Civ.R. 54(B) certification language making the order final and appealable. We find that such language within the summary judgment entry was not required.

Civ.R. 54(B) states:

"When more than one claim for relief is presented in an action * * * or when multiple parties are involved, the court may enter final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay."

Typically, without such an express determination, an order that adjudicates fewer than all the claims or parties does not terminate the action and is subject to revision. Civ.R. 54(B); *Gen. Acc. Ins. Co. v. Ins. Co. of N. Am.* (1989), 44 Ohio St.3d 17, 20, 540 N.E.2d 266, 269–270. Furthermore, is it not final or subject to appeal. *Jarrett v. Dayton Osteopathic Hosp., Inc.* (1985), 20 Ohio St.3d 77, 78, 20 OBR 407, 407–408, 486 N.E.2d 99, 100.

We find that this was not an entry to which Civ.R. 54(B) applied. Given the current procedural status of this case, there were no remaining parties for whom, or claims for which, the trial court needed to render additional judgments,

because the rights and liabilities of all the parties interested in this matter had been resolved. As stated earlier, the only parties with claims in this matter were State Savings and the Cootses. This is a result of the default judgment granted to State Savings against three of the parties named in the foreclosure suit and State Savings' concession that the Union County Treasurer has a superior claim to the property.

Accordingly, when all claims and parties are adjudicated in an action, the finality language requirements of Civ.R. 54(B) is not required. *Commercial Natl. Bank v. Deppen* (1981), 65 Ohio St.2d 65, 66–67, 19 O.O.3d 260, 260–261, 418 N.E.2d 399, 400–401. Thus, State Savings' first assignment of error is overruled.

In conclusion, for the foregoing reasons, State Savings' assignments of error are overruled, and the summary judgment granted by the Court of Common Pleas of Union County is affirmed.

*Judgment affirmed.*

EVANS and THOMAS F. BRYANT, JJ., concur.