OPINION *Page 2 
{¶ 1} Plaintiff-Appellant Citifinancial, Inc. ("Citifinancial") appeals from the March 12, 2008 Entry of the Court of Common Pleas, Hardin County, Ohio wherein the court ordered that Defendant-Appellee Liberty Collection Services, was entitled to lien priority as against Citifinancial in the instant mortgage foreclosure action.
 {¶ 2} On or about December 27, 1999 Jeffrey L. Howard ("Howard") executed a promissory note in favor of Citifinancial in the amount of $62,611.52. In order to secure this note, Howard executed a mortgage to Citifinancial securing real estate located at 503 North Leighton Street, Kenton, Ohio. This mortgage was recorded in Volume 167 in the Hardin County Recorder's Office.
 {¶ 3} In the spring of 2000, Howard and Randall Comer sought financing from Liberty National Bank to finance a new business venture called Kenton Technical Services, Ltd. At this time, Liberty National Bank conducted a title examination which revealed that the 503 North Leighton Street property was secured by the 1999 mortgage with Citifinancial. On or about May 31, 2000 Comer and Howard executed a promissory note on behalf of Kenton Technical Services, Ltd. in favor of Liberty National Bank in the amount of $52,656.00. At this time Comer and Howard, in their individual capacity, each executed a Commercial Continuing Guarantee. Additionally, in order to secure the *Page 3 
promissory note, Howard, in his individual capacity, executed an open-end mortgage personally securing the property located at 503 North Leighton Street in favor of Liberty National Bank. This open-end mortgage was recorded in Volume 192 in the Hardin County Recorder's Office on June 30, 2000.[1] On or about May 22, 2006 Liberty National Bank assigned all of its rights, title, and interest under the note and mortgage to Liberty Collection Services, LLC ("Liberty").
 {¶ 4} Sometime during the spring of 2002, Howard entered into an agreement with Citifinancial to refinance the 1999 note and mortgage. In anticipation of refinancing the 1999 mortgage, Citifinancial retained Chesapeake Title Appraisal Services ("Chesapeake") to perform closing services.[2] Chesapeake then retained Jacqueline Kinn ("Kinn") to perform the title examination of the subject property for the refinancing of the 1999 note and 1999 mortgage.[3] Although the mortgage to Liberty National Bank was properly filed and recorded in the Hardin County Records, the title report issued by Kinn did not reveal this mortgage. Based upon the title examination performed by Kinn, *Page 4 
Chesapeake issued a "Commitment to Issue Lenders Policy of Title Insurance" to Citifinancial which was not signed.
 {¶ 5} On or about July 2, 2002 Howard closed on the refinance of the 1999 mortgage by executing a promissory note in favor of Citifinancial in the amount of $57,851.64 with an interest rate of 11.02% for a period of 300 months. This promissory note was secured by a mortgage (on the 503 North Leighton Street property) executed by Howard in favor of Citifinancial and was filed in the Hardin County Records on July 2, 2002. $56,946.61 of the loan proceeds underlying this 2002 promissory note and mortgage were used to satisfy the 1999 mortgage. Citifinancial then released its prior 1999 mortgage by filing a release, as listed in Volume 393 in the Hardin County Recorder's Office, on July 10, 2002.
 {¶ 6} Howard subsequently defaulted under the terms of the 2002 promissory note and mortgage, with said debt of $58,651.09 being accelerated by Citifinancial. Howard also defaulted under the terms of the 2000 promissory note and mortgage held by Liberty National Bank (as assigned to Liberty Collection Services) with said debt of $49,608.44 being accelerated by Liberty.
 {¶ 7} On March 29, 2007 Citifinancial filed a complaint in foreclosure in the Hardin County Court of Common Pleas against Howard, the unknown spouse of Howard, Kenton Technical Services, Ltd., Liberty, B.B.G., and the *Page 5 
Hardin County Treasurer.[4] CitiFinancial's complaint sought judgment on the 2002 promissory note and to foreclose its mortgage from Howard securing the real property located at 503 North Leighton Street. Contemporaneously with the filing of the complaint in this matter, a title examination revealed the mortgage to Liberty National Bank. On April 9, 2007 Liberty filed an answer to CitiFinancial's complaint, disputing CitiFinancial's allegation that it was entitled to first lien position on the property located at 503 North Leighton Street. On August 23, 2007 the trial court issued a Partial Dismissal Entry dismissing Liberty National Bank, without prejudice, from the instant case. On January 2, 2008 Citifinancial filed a motion for default judgment against Howard and his unknown spouse.
 {¶ 8} On January 4, 2008 Citifinancial and Liberty filed a stipulation of facts and both parties subsequently filed trial briefs in support of their respective arguments regarding the instant lien priority dispute. Specifically, the trial court was presented with two issues to decide: First, whether the mortgage filed by Liberty National Bank (later assigned to Liberty Collection Services) was defective because an incorrect notary clause was used by Liberty National Bank on the preprinted form. Second, whether Liberty was entitled to first priority upon Citifinancial's release of its 1999 mortgage since Liberty's mortgage *Page 6 
became recorded first in time, or whether Citifinancial was entitled to first priority based upon the doctrine of equitable subrogation.
 {¶ 9} On March 12, 2008 the trial court issued an Entry wherein the court granted Citifinancial's motion for default judgment and ordered that judgment be rendered against Howard and that the real property located at 503 North Leighton Street be sold a sheriff's sale. Additionally, the trial court determined that Liberty's mortgage was entitled to lien priority over Citifinancial's mortgage having been filed first in time to that of Citifinancial and that Liberty's mortgage substantially complied with the provisions of Ohio Revised Code section 5301.01.
 {¶ 10} Citifinancial now appeals, asserting two assignments of error.
 ASSIGNMENT OF ERROR NO. 1 THE DECISION OF THE TRIAL COURT THAT APPELLEE'S MORTGAGE SUBSTANTIALLY COMPLIES WITH OHIO REVISED CODE SECTION 5301.01 IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND CONTRARY TO LAW.
 ASSIGNMENT OF ERROR NO. 2 EVEN IF APPELLEE'S MORTGAGE SUBSTANTIALLY COMPLIES WITH OHIO REVISED CODE SECTION 5301.01, THE DECISION OF THE TRIAL COURT THAT CITIFINANCIAL IS NOT ENTITLED TO FIRST LIEN POSITION PURSUANT TO THE DOCTRINE OF EQUITABLE SUBROGATION IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND CONTRARY TO LAW. *Page 7 
 Assignment of Error No. 1 {¶ 11} In its first assignment of error, Citifinancial alleges that the trial court's determination that Liberty's mortgage substantially complies with R.C. 5301.01 is against the manifest weight of the evidence.
 {¶ 12} As an appellate court, we neither weigh the evidence nor judge the credibility of the witnesses. Our role is to determine whether there is relevant, competent, and credible evidence upon which the fact finder could base its judgment. Wells Fargo Financial Leasing, Inc. v.Rinard, 5th Dist. No. 07-CA-8, 2008-Ohio-437. Accordingly, a judgment supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence.Seasons Coal Co., Inc. v. Cleveland (1984), 10 Ohio St.3d 77, 80,461 N.E.2d 1273.
 {¶ 13} R.C. 5301.01 governs the acknowledgement of deeds, mortgages, land contracts, leases, and memoranda of trusts and provides, in relevant part, as follows:
 (A) A deed, mortgage, land contract . . . or lease of any interest in real property and a memorandum of trust . . . shall be signed by the grantor, mortgagor, vendor, or lessor in the case of a deed, mortgage, land contract, or lease or shall by signed by the trustee in the case of a memorandum of trust. The signing shall be acknowledged by the grantor, mortgagor, vendor, or lessor, or by the trustee, before a judge or clerk of a court of record in this state, or a county auditor, county engineer, notary public, or mayor, who shall certify the acknowledgement and subscribe the official's name to the certificate of the acknowledgment. *Page 8 
 {¶ 14} In support of its first assignment of error, Citifinancial alleges that its 2002 mortgage is entitled to priority over the 2000 mortgage to Liberty because the mortgage to Liberty National Bank was defectively executed and not acknowledged in accordance with R.C. 5301.01, and therefore was not entitled to have been recorded. Specifically, Citifinancial argues that pursuant to R.C. 5301.01, because Howard owned the subject property located at 503 North Leighton Street in his individual capacity, Howard had to execute any mortgage (including Liberty's mortgage) and have his signature acknowledged in his individual capacity.
 {¶ 15} However, Citifinancial notes that Howard executed Liberty's mortgage in his individual capacity but acknowledged the execution thereof on behalf of "Kenton Technical Services, Ltd." (See Stipulation of Facts, Exhibit 7). Accordingly, Citifinancial alleges that the only way Liberty could establish substantial compliance with R.C. 5301.01 was to present evidence, in the form of affidavits by Liberty National Bank, Howard, and/or Shirley Stauffer (the notary public who witnessed Howard's signature on the mortgage to Liberty) that the acknowledgment clause was incorrect and that Howard did, in fact, acknowledge the execution of the mortgage document in his individual capacity.
 {¶ 16} Our review of the record reveals that the evidence before the trial court clearly reflected that the 2000 mortgage to Liberty National Bank was *Page 9 
signed by Howard as the mortgagor and as an individual, and that Howard's signature was witnessed by Shirley Stouffer. Our review of the record also reveals that Stouffer placed her acknowledgment in the short form of the mortgage (as authorized by R.C. 147.55) however it appears as if she incorrectly placed her acknowledgment of Howard's signature in the corporate form instead of the individual form.
 {¶ 17} In finding substantial compliance with the requirements of R.C. 5301.01, the Tenth District Court of Appeals has held, "[w]here an error occurs in the name of a party to a written instrument, apparent upon its face, and, from its contents, susceptible of correction, so as to identify the party with certainty, such error does not affect the validity of the instrument." Mid-American Nat'l Bank Trust Co. v.Gymnastics Internat'l, Inc. (1982), 6 Ohio App.3d 11, 13,451 N.E.2d 1243.[5] The Tenth District also stated as follows:
 In aid of the certificate of acknowledgment, reference may be had to the deed or to any part of it; and every reasonable intendment should be made to its support. If from the face of the deed, including the certificate of acknowledgment, there is no doubt as to what was done, which was in accordance with the requirements of the statute, the acknowledgment should be held valid. *Page 10 
Mid-American, supra at 13 citing 7 Thompson on Real Property (1962), 611, Section 3314.
 {¶ 18} Additionally, this court has previously followed the rationale set forth in Mid-American, supra, regarding substantial compliance with R.C. 5301.01. In Administrator of Veterans Affairs v. City Loan (May 7, 1885), 3rd Dist. No. 17-83-12, unreported, 1985 WL 9128, the plaintiff-appellant contended that the mortgage was defective as it was not acknowledged as required by R.C. 5301.01; specifically, because in the acknowledgment the mortgagee's name (City Loan) was incorrectly listed as mortgagor instead of the mortgagor herself (Betty Weber). In affirming the judgment of the trial court, this court held as follows:
 The stipulated evidence (affidavits and deposition) in this case indicates that Betty S. Weber was present when the mortgage was executed and that she, at that time, acknowledged to the notary public that she signed same. The printing of defendant's name in the certificate of acknowledgement on the line reserved for the mortgagor's was a clerical mistake. It is obvious from the face of the mortgage that Weber was the mortgagor.
 This court finds that R.C. 5301.01 was substantially complied with, and that the instrument, considered as a whole, created a valid lien on the premises in question.
Administrator of Veterans Affairs, supra at *3.
 {¶ 19} Finally, we note that in the present case the parties' Stipulation of Facts contains the following stipulation: *Page 11 
 10. It was the intent of Kenton Technical Services, Ltd., Defendant Jeffrey L. Howard, and Liberty National Bank that Defendant Jeffrey L. Howard executed the Open-End Mortgage individually and be bound by the Open-End Mortgage individually.
Based upon the language of the stipulation, the parties clearly intended that Howard execute the mortgage as an individual and that he intended to be bound by the mortgage individually.
 {¶ 20} Based on the foregoing, we agree with the trial court's determination that "[t]he fact that Howard's name appeared in the corporate acknowledgement section of the mortgage instead of the individual acknowledgement section does not negate the fact that as the owner of the property he had both the capacity and intent (Stipulation No. 10) to pledge same as security for repayment of the corporation's debt." We also agree with the trial court's finding that the acknowledgement by Stouffer (as notary public) is consistent with the terms set forth on the face of the mortgage itself which show that an individual [Howard] is the mortgagor and not the corporation, the borrower. (See March 12, 2008 Entry).
 {¶ 21} Accordingly, we find that there was competent and credible evidence presented upon which the trial court could have based its judgment that the 2000 mortgage to Liberty National Bank substantially complied with the *Page 12 
requirements set forth in R.C. 5301.01 regarding the execution of a mortgage. Therefore, Citifinancial's first assignment of error is overruled.
 Assignment of Error No. 2 {¶ 22} In its second assignment of error, Citifinancial alleges that the trial court's decision that Citifinancial is not entitled to first lien position pursuant to the doctrine of equitable subrogation is against the manifest weight of the evidence. "As stated in State, Dept.of Taxation v. Jones (1980), 61 Ohio St.2d 99, 102, 399 N.E.2d 1215, equitable subrogation "arises by operation of law when one having a liability or a fiduciary relation in the premises pays a debt due by another under such circumstances that he is in equity entitled to the security or obligation held by the creditor whom he has paid." StateSav. Bank v. Gunther (1998), 127 Ohio App.3d 338, 346, 713 N.E.2d 7
citing Federal Union Life Ins. Co. v. Deitsch (1934), 127 Ohio St. 505,510, 189 N.E. 440. Equitable subrogation has been described as a theory of unjust enrichment, preventing parties from receiving that to which they are not entitled. Id. citing Williams v. Erie Ins. Group (1993),86 Ohio App.3d 660, 665, 621 N.E.2d 770.
 {¶ 23} The doctrine of equitable subrogation serves to prevent fraud and provide relief against mistakes. Jones, 61 Ohio St.2d at 102. However, the right to equitable subrogation depends upon the facts and circumstances of each case, and the basis for the claim must be readily apparent. Gunther, supra, *Page 13 127 Ohio App.3d at 346 citing Jones, 61 Ohio St.2d at 102. Equitable subrogation will not be used to benefit parties who were negligent in their business transactions and who were obviously in the best position to protect their own interests. Associates Financial Services Corp. v. Miller
(April 5, 2002), Portage App. No. 2001-P-0046, unreported. Furthermore, courts should not apply the doctrine of equitable subrogation to defeat statutory lien priorities where a lender could have avoided the predicament about which it complains. Fifth Third Bank v. Lorance, 12th Dist. No. CA2006-10-280, 2007-Ohio-4217 citingHuntington Nat'l. Bank v. McCallister (Feb. 18, 1997), Butler App. No. CA96-07-144, unreported; Chase Manhattan Bank v. Weston, 12th Dist. No. CA2002-12-099, 2003-Ohio-5112.
 {¶ 24} In the present case, Citifinancial argues that it is entitled to be equitably subrogated to the lien position of its 1999 mortgage because it was prejudiced by Jacqueline Kinn's failure to locate Liberty's recorded mortgage during her title examination. Citifinancial also argues that it followed ordinary business practices by properly preparing the loan documents, requesting a title examination of the subject property, properly disbursing the loan fund, and ensuring that its mortgage was timely recorded. Additionally, Citifinancial argues that because it intended to be in first lien position and because it did everything it could to protect its interest, it should not be punished because of Kinn's failure to locate Liberty's recorded mortgage. Therefore, Citifinancial argues that having *Page 14 
satisfied the prior first mortgage in the amount of $56,946.61, it should be entitled to first lien position for this amount pursuant to the doctrine of equitable subrogation.
 {¶ 25} In State, Dept. of Taxation v. Jones, supra, the Supreme Court of Ohio addressed the issues of lien priority and equitable subrogation. In Jones, Cleveland Federal Savings Loan provided a loan to the Joneses that was secured by a mortgage. Cleveland Federal then provided a second loan that was secured by a mortgage on the same property as the first loan. The proceeds from the second loan were used to pay off the first loan (as well as additional judgment liens that had attached to the Joneses property). In between the time of the execution and the recording of the second mortgage, the State of Ohio Department of Taxation obtained a certificate of judgment lien that attached to the property subject to Cleveland Federal's mortgage. Jones,61 Ohio St.2d 99-100. Subsequently, the State filed a complaint in foreclosure against the real estate secured by Cleveland Federal's mortgage. Id. In answering the State's complaint, Cleveland Federal alleged that its mortgage had priority over the State's certificate of judgment lien pursuant to the doctrine of equitable subrogation.
 {¶ 26} In rendering its decision, the Supreme Court of Ohio determined that Cleveland Federal's "own actions led to its dilemma of not obtaining the best *Page 15 
priority lien." Id. at 102. Specifically, the court found that Cleveland Federal "was in complete control of the refinancing application . . . controlled the disbursement of the funds, the filling out of all the forms, the date of the filing, and even the hiring of the title company." Id. at 102-103. Based upon these findings, the court held that it would not invoke the doctrine of equitable subrogation.[6]
 {¶ 27} In his dissenting opinion, Justice Holmes disagreed with the majority "as to the holding that the principle of equitable subrogation could not be applied here to the payments made by Cleveland Federal to other lienholders." Id. at 104. However, Justice Holmes agreed with the majority when he stated "I do not believe that equitable subrogation may be applied in the instance of Cleveland Federal having satisfied its own prior secured debt with the proceeds of the latter secured loan."Id. at 105. Specifically, Justice Holmes stated as follows:
 The doctrine of subrogation in its broadest sense is the substitution of one person for another with reference to a lawful claim or right, or the substitution of another person in the place of the creditor to whose rights he succeeds. (Citations omitted). Here, it is my position that Cleveland Federal may not be subrogated to its own original rights. For purposes of *Page 16 subrogation, it may stand in the shoes of others, but not in its own original shoes.
Id.
 {¶ 28} In State Sav. Bank v. Gunther (1998), 127 Ohio App.3d 338,713 N.E.2d 7, supra, this court noted that the situation of State Savings was similar to that of the savings and loan institution inJones, whose request for application of equitable subordination was denied. In determining that the trial court did not err in denying State Savings' request for equitable subrogation, this court used the language of Jones "with observations adaptable to State Savings" and determined as follows:
 "[State Savings] was in complete control of the [loan] application, and, yet, by [its] own actions and inactions, [the Cootses], without acting fraudulently, [were] able to secure priority of [their] claim by filing [eight days after State Savings' closing and nine months prior to State Savings]. "[State Savings] controlled the disbursement of the funds, the filling out of all the forms, the date of the filing and even the hiring of the title company."
Gunther, 127 Ohio App.3d 338 at 347.
 {¶ 29} In the present case, the parties' Stipulation of Facts contains the following stipulation:
 17. Citifinancial, Inc., with respect to the note and mortgage with Jeffrey L. Howard, had exclusive control over preparation of the loan documents, disbursement of the loan funds, closing of the loan. Chesapeake had responsibility for retaining Jacqueline S. Kinn, preparing title commitments, filing of all documents and preparing and issuing the title policy. *Page 17 
 {¶ 30} We note that equitable subrogation will not be used to benefit parties who were negligent in their business transactions, and who were obviously in the best position to protect their own interests.Associates Financial Services Corp. v. Miller, 11th Dist. No. 2001-P-0046, 2002-Ohio-1610 citing Leppo, Inc. v. Kiefer (Jan. 31, 2001), Summit App. Nos. 20097 and 20105, unreported. Our review of the record reveals that Citifinancial exercised complete control over the transaction underlying its 2002 promissory note and mortgage. Additionally, we agree with the trial court's finding as follows:
 Taking into consideration Citifinancial had exclusive control over the preparation of the loan documents, disbursement of loan funds, closing of the loan and indirectly the selection of the title examiner (Stipulation No. 17), it is the opinion of the Court that Citifinancial was in the best position to protect its own interests.
(See March 12, 2008 Entry, p. 4).
 {¶ 31} Furthermore, the evidence presented to the trial court clearly demonstrated that upon Citifinancial's release of its 1999 mortgage, Liberty's mortgage became the first mortgage recorded and therefore should have preference over subsequently recorded mortgages. Thus, we find that there was competent and credible evidence presented upon which the trial court could have based its decision that Citifinancial's claim for equitable subrogation was not applicable, and therefore find that the trial court did not err in denying *Page 18 
Citifinancial's request for equitable subrogation. Accordingly, Citifinancial's second assignment of error is overruled.
 {¶ 32} Based on the foregoing, we find that the trial court's judgment is supported by competent, credible evidence and is not against the manifest weight of the evidence. Therefore, the March 12, 2008 Entry of the Hardin County Court of Common Pleas is affirmed.
Judgment Affirmed.
 WILLAMOWSKI and ROGERS, J.J., concur.
[1] Our review of the record reveals that the "Borrower" listed on the open-end mortgage (as executed by Howard in favor of Liberty National Bank) is Kenton Technical Services, Ltd. while the "Mortgagor" is Jeffrey Howard.
[2] At the time of the 2002 refinancing of the 1999 mortgage, Citigroup was the parent company of both Citifinancial and Chesapeake.
[3] Kinn was not an employee of either Chesapeake or Citifinancial at the time she performed the title examination.
[4] On April 23, 2007 Citifinancial filed a supplemental complaint, naming Liberty National Bank as a defendant to this action.
[5] In affirming the trial court's judgment in Mid-American, the Tenth District Court of Appeals noted that "it is apparent from the face of the instrument that the above named . . . mortgagors, Gymnastics International, Inc. appeared through its officers, the president and secretary-treasurer. The notary public was also a witness; she, therefore, saw the officer sign and acknowledge the instrument.Mid-American, supra at 13.
[6] In support of its decision, the Supreme Court of Ohio citedFt. Dodge Building Loan Assn. v. Scott (1892), 86 Iowa 431, 58 NW 283
wherein the Iowa Supreme Court stated as follows: The position of the plaintiff is the result of its own negligence. It relied upon an abstract of title which was not brought up to date, and which failed to note the pendency of this defendant's action, or the judgment in his favor. An examination of the court records . . . on the day the loan was made would have informed plaintiff of the existence of this judgment . . . Without making this examination, which the most ordinary care required, plaintiff made the loan, and accepted its mortgage. Surely equity will not reward such negligence by applying the doctrine of subrogation in favor of the negligent party. To do so would encourage carelessness in taking such securities . . ." Jones, supra at 103-104. *Page 1