OPINION *Page 2 
{¶ 1} Appellant, Fifth Third Bank ("Fifth Third") appeals from the January 13, 2009 Judgment Entry of the Court of Common Pleas, Wyandot County, Ohio wherein the court ordered that Appellee, Midwest Business Capital ("Midwest"), was entitled to lien priority as against Fifth Third in the instant mortgage foreclosure action.
 {¶ 2} This matter arises out of a dispute concerning the lien priority of mortgages executed on real property located at 9430 County Hwy. 134 in Nevada, Ohio. The original complaint filed in this case concerned multiple parcels of land. However, this appeal concerns only the real property located at 9430 County Hwy. 134 which will be referred to as "Parcel 5."
 {¶ 3} On September 4, 1998, Floyd Marshall ("Floyd") and Sandra Marshall ("Sandra") executed an open-ended mortgage and promissory note in favor of Fifth Third in the amount of $150,000 secured by Parcel 5. This mortgage was filed for record with the Wyandot County Recorder's Office ("Recorder") on September 16, 1998.
 {¶ 4} On or about March 30, 2001 Floyd and Craig Marshall ("Craig"), on behalf of Mar-Metal Mfg., Inc, [1] executed and delivered a U.S. Small Business Administration ("SBA") Promissory Note in the principle amount of $1,370,000 to *Page 3 
Midwest.[2] Also on March 30, 2001, Floyd and Sandra executed and delivered a mortgage on Parcel 5 securing the SBA note.[3] In executing the mortgage on Parcel 5 to Midwest, it was expressly noted that Parcel 5 was already encumbered by the Fifth Third mortgage. The Midwest mortgage was filed in the Recorder's office on April 3, 2001.
 {¶ 5} On or about January 13, 2006 Floyd and Sandra executed and delivered an Equity Flexline Credit Agreement and Security Agreement to Fifth Third, in the amount of $200,000 secured by Parcel 5. This was not a new line of credit, but an increase on the line of credit, recorded on September 16, 1998, from $150,000 to $200,000. At the time of the increase, Floyd and Sandra represented to Fifth Third that the parcel was free and clear and no other parties had an interest in the property. On February 6, 2006 Fifth Third filed the $200,000 mortgage with the Recorder. After the equity line of credit and open-ended mortgage in favor of Fifth Third was executed and recorded, Fifth Third released the original 1998 mortgage on February 14, 2006.
 {¶ 6} This case arises out of a "Complaint for Foreclosure, Replevin and Other Relief originally filed on December 13, 2006. Originally, Sky Bank, Mid Am Region ("Sky Bank") filed a complaint for foreclosure in the Wyandot County Court of Common Pleas against Mar-Metal, Floyd, Sandra, Craig, Connie *Page 4 
Marshall ("Connie"), Midwest, Fifth Third, BSM Financial LP, Mortgage Electronic Registration Systems, Synergy Resources, Ithaca Guns LLC, Toyoda Machinery USA Corp, US Bancorp Equipment Finance Inc.,Sierracities.com Inc., First Sierra Financial Inc., First Citizens National Bank, City of Upper Sandusky Revolving Loan Fund, GE Capital, Colonial Pacific Leasing, and the Wyandot County Treasurer alleging that Mar-Metal, Floyd, Sandra, and Craig defaulted on the terms of repayment of various mortgages and loans made by Sky Bank.
 {¶ 7} The original foreclosure action concerned eight parcels of land as well as various business assets of Mar-Metal. The current appeal concerns only Parcel 5, a property that Sky Bank did not claim an interest in. Accordingly, Sky Bank and Mar-Metal are not participants in this appeal which only concerns the lien priority on Parcel 5 as between Fifth Third and Midwest.
 {¶ 8} On January 12, 2007 Midwest filed an answer, cross-claims, and counterclaims. On March 15, 2007 Fifth Third filed an answer, cross-claim, and counterclaim.
 {¶ 9} On February 20, 2008 the sale of Parcel 5 was ordered. Fifth Third objected to the sale of the property. After Fifth Third's objection, and with the consent of all of the parties, the February 20, 2008 Judgment Entry was vacated on March 6, 2008.
 {¶ 10} On May 2, 2008 the trial court entered a "Judgment Decree in Foreclosure and Order of Sale of Parcels 5 and 8" ordering the sale of Parcel 5. *Page 5 
 {¶ 11} On May 29, 2008 Fifth Third moved for summary judgment in its favor as to lien priority on Parcel 5. In its motion, Fifth Third argued that it was entitled to lien priority on Parcel 5 because it had the first mortgage on the property.
 {¶ 12} On June 24, 2008 Midwest filed its motion in opposition to Fifth Third's motion for summary judgment arguing that it had lien priority on Parcel 5. Fifth Third filed its response on July 1, 2008. The trial court denied Fifth Third's motion for summary judgment on July 7, 2008.
 {¶ 13} Parcel 5 was sold at sheriff's sale. On September 23, 2008 the trial court entered an "Order of Confirmation and Distribution of Parcel 5," directing that the proceeds from the sale of Parcel 5, beyond those paid out to cover the costs of the sale, be held for a determination of lien priority.
 {¶ 14} On November 20, 2008 Midwest filed a motion for a determination of lien priority, requesting that the trial court find that it had the first and best lien on Parcel 5. Midwest also requested that the trial court authorize the disbursement of the proceedings from the sale of Parcel 5. Fifth Third filed a motion in opposition on November 26, 2008. Various reply memoranda were filed and on January 13, 2009 the trial court issued its Judgment Entry in the matter. In its Judgment Entry the trial court found that Midwest had the first and best lien on Parcel 5.
 {¶ 15} Fifth Third appeals, asserting two assignments of error. *Page 6 
 ASSIGNMENT OF ERROR I IN GRANTING SUMMARY JUDGMENT TO MIDWEST BUSINESS CAPITAL, THE TRIAL COURT IMPROPERLY RELIED UPON THE DOCTRINE OF EQUITABLE SUBROGATION TO CONCLUDE THAT MIDWEST CAPITAL BANKS' MORTGAGE WAS A FIRST LIEN ON THE SUBJECT PROPERTY
 ASSIGNMENT OF ERROR II THE DECISION OF THE TRIAL COURT GRANTING THE MOTION OF MIDWEST BUSINESS CAPITAL FOR DETERMINATION OF LIEN PRIORITY AND FOR DISBURSEMENT OF SALE PROCEEDS WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND CONTRARY TO LAW.
 {¶ 16} For ease of discussion, we will address Fifth Third's assignments of error together. Fifth Third argues that the trial court erred in granting first lien position to Midwest based upon the doctrine of equitable subrogation. Specifically, Fifth Third argues that the determination of Midwest's lien priority was against the manifest weight of the evidence and contrary to law.[4]
 {¶ 17} As an appellate court, we neither weigh the evidence nor judge the credibility of the witnesses. Our role is to determine whether there is relevant, competent, and credible evidence upon which the fact finder could base its judgment. Wells Fargo Financial Leasing, Inc. v.Rinard, 5th Dist. No. 07-CA-8, 2008-Ohio-437. Accordingly, a judgment supported by some competent, credible *Page 7 
evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence. Seasons Coal Co., Inc. v. Cleveland (1984),10 Ohio St.3d 77, 80, 461 N.E.2d 1273.
 {¶ 18} As an initial matter, we note that in its brief, Midwest argues that Fifth Third did not raise the doctrine of conventional subrogation in any of its trial court motions. Although perhaps not clearly articulated, we find that Fifth Third did include the concept of conventional subrogation in its pleadings before the trial court. Accordingly, we will address the application of both equitable subrogation and conventional subrogation to the facts of the case at bar.
 {¶ 19} Revised Code 5301.23 provides for the filing of mortgages with the county recorder's office as follows:
 All properly executed mortgages shall be recorded in the office of the county recorder of the county in which the mortgaged premises are situated and shall take effect at the time they are delivered to the recorder for record. If two or more mortgages pertaining to the same premises are presented for record on the same day, they shall take effect in the order of their presentation. The first mortgage presented shall be the first recorded, and the first mortgage recorded shall have preference.
 {¶ 20} Subrogation generally substitutes one party in the place of another regarding the other's claim or right. State Dept. of Taxation v.Jones (1980), 61 Ohio St.2d 99, 100-101, 399 N.E.2d 1215. Conventional subrogation, either express or implied, focuses upon the contractual obligations of the parties, which *Page 8 
compel a payor-creditor to be substituted for the creditor discharged by the payor's loan. Jones, 61 Ohio St.2d at 101.
 {¶ 21} Alternatively, equitable subrogation "arises by operation of law when one having a liability or a fiduciary relation in the premises pays a debt due by another under such circumstances that he is in equity entitled to the security or obligation held by the creditor whom he has paid." State Sav. Bank v. Gunther (1998), 127 Ohio App.3d 338, 346,713 N.E.2d 7 citing Federal Union Life Ins. Co. v. Deitsch (1934),127 Ohio St. 505, 510, 189 N.E. 440. Equitable subrogation has been described as a theory of unjust enrichment, preventing parties from receiving that to which they are not entitled. Id. citing Williams v. Erie Ins. Group
(1993), 86 Ohio App.3d 660, 665, 621 N.E.2d 770.
 {¶ 22} The doctrine of equitable subrogation serves to prevent fraud and provide relief against mistakes. Jones, 61 Ohio St.2d at 102. However, the right to equitable subrogation depends upon the facts and circumstances of each case, and the basis for the claim must be readily apparent. Gunther, supra, 127 Ohio App.3d at 346 citing Jones,61 Ohio St.2d at 102. Equitable subrogation will not be used to benefit parties who were negligent in their business transactions and who were obviously in the best position to protect their own interests. AssociatesFinancial Services Corp. v. Miller, 11th Dist. App. No. 2001-P0046, 2002-Ohio-1610. Furthermore, courts should not apply the doctrine of equitable subrogation to defeat statutory lien priorities where a lender could have avoided the predicament *Page 9 
about which it complains. Fifth Third Bank v. Lorance, 12th Dist. No. CA2006-10-280, 2007-Ohio-4217 citing Huntington Nat'l. Bank v.McCallister (Feb. 18, 1997), Butler App. No. CA96-07-144, unreported;Chase Manhattan Bank v. Weston, 12th Dist. No. CA2002-12-099, 2003-Ohio-5112.
 {¶ 23} In the present case, Fifth Third argues that conventional subrogation is applicable because the Midwest mortgage noted that Parcel 5 was already subject to Fifth Third's $150,000 mortgage. However, Midwest's acknowledgement of the pre-existing $150,000 mortgage did not serve as an agreement to take a junior lien position. Fifth Third relies on Straman v. Rechtine (1989), 58 Ohio St. 443, 51 N.E. 44 for the proposition that Fifth Third should be restored to its first lien position that existed before the release. While the court, inStraman, did allow a creditor to regain first lien position after releasing a prior mortgage and issuing a second mortgage, the transaction in Straman is distinguishable. In Straman, the lien arose by operation of law, so it was not of record, and the first lien holder had negotiated with the known encumbrance holder to accept a junior position prior to refinancing the mortgage. See Straman v. Rechtine,58 Ohio St. at 458.
 {¶ 24} In the present case, the record demonstrates no evidence of a negotiation of lien priorities and this court cannot find that an agreement of the parties existed which would result in conventional subrogation. Moreover, it is clear that no bargaining occurred regarding lien priorities, as it does not appear *Page 10 
that Fifth Third was aware of Midwest's lien on Parcel 5 at the time of the $200,000 mortgage.
 {¶ 25} Moreover, Fifth Third is not entitled to equitable subrogation in the present case. In State, Dept. of Taxation v. Jones, supra, a case remarkably similar to the present case, the Supreme Court of Ohio addressed the issues of lien priority and equitable subrogation. InJones, Cleveland Federal Savings Loan provided a loan to the Joneses that was secured by a mortgage. Cleveland Federal then provided a second loan that was secured by a mortgage on the same property as the first loan. The proceeds from the second loan were used to pay off the first loan (as well as additional judgment liens that had attached to the Joneses property). In between the time of the execution and the recording of the second mortgage, the State of Ohio Department of Taxation obtained a certificate of judgment lien that attached to the property subject to Cleveland Federal's mortgage. Jones,61 Ohio St.2d at 99-100. Subsequently, the State filed a complaint in foreclosure against the real estate secured by Cleveland Federal's mortgage.Id. In answering the State's complaint, Cleveland Federal alleged that its mortgage had priority over the State's certificate of judgment lien pursuant to the doctrine of equitable subrogation.
 {¶ 26} In rendering its decision, the Supreme Court of Ohio determined that Cleveland Federal's "own actions led to its dilemma of not obtaining the best priority lien." Jones, 61 Ohio St.2d at 102. Specifically, the court found that *Page 11 
Cleveland Federal "was in complete control of the refinancing application . . . controlled the disbursement of the funds, the filling out of all the forms, the date of the filing, and even the hiring of the title company." Jones, 61 Ohio St.2d at 102-103. Based upon these findings, the court held that it would not invoke the doctrine of equitable subrogation.[5]
 {¶ 27} In State Sav. Bank v. Gunther (1998), 127 Ohio App.3d 338,713 N.E.2d 7, supra, this court noted that the situation of State Savings was similar to that of the savings and loan institution inJones, whose request for application of equitable subordination was denied. In determining that the trial court did not err in denying State Savings' request for equitable subrogation, this court used the language of Jones "with observations adaptable to State Savings" and determined as follows:
 "[State Savings] was in complete control of the [loan] application, and, yet, by [its] own actions and inactions, [the Cootses], without acting fraudulently, [were] able to secure priority of [their] claim by filing [eight days after State Savings' closing and nine months prior to State Savings].
 "[State Savings] controlled the disbursement of the funds, the filling out of all the forms, the date of the filing and even the hiring of the title company." *Page 12 
Gunther, 127 Ohio App.3d 338 at 347, 713 N.E.2d 7.
 {¶ 28} In the present case, Fifth Third did not perform a title search at the time it released the original $150,000 mortgage. Had Fifth Third done so, it would have discovered Midwest's mortgage on Parcel 5. Fifth Third only found itself in the position of holding the junior lien "[a]fter a series of improvident business maneuvers." Jones,61 Ohio St.2d at 103. Therefore, we find, as in Jones, that Fifth Third created its own predicament of having a junior lien. Accordingly, Fifth Third's first and second assignments of error are overruled.
 {¶ 29} Based on the foregoing, the January 13, 2009 Judgment Entry of the Court of Common Pleas, Wyandot County, Ohio wherein the court ordered that Midwest was entitled to lien priority is affirmed.
Judgment Affirmed
 PRESTON, P.J., and WILLAMOWSKI, J., concur.
[1] Although not expressly stated in the record, it appears that Mar-Metal was a family owned business of the Marshalls.
[2] Floyd and Craig both executed unconditional guarantees of repayment.
[3] It appears that the SBA promissory note was also secured by other parcels of land owned by the Marshall family. However, those parcels are not at issue in this appeal.
[4] Having found that the trial court's January 13, 2009 Judgment Entry related to Midwest's motion for Determination of Lien Priority and for Disbursement of Sale Proceeds, it is not necessary to address this case using a summary judgment standard, relating back to Fifth Third's motion for summary judgment which was denied on July 7, 2008.
[5] In support of its decision, the Supreme Court of Ohio citedFt. Dodge Building Loan Assn. v. Scott (1892), 86 Iowa 431,58 N.W. 283 wherein the Iowa Supreme Court stated as follows: "The position of the plaintiff is the result of its own negligence. It relied upon an abstract of title which was not brought up to date, and which failed to note the pendency of this defendant's action, or the judgment in his favor. An examination of the court records . . . on the day the loan was made would have informed plaintiff of the existence of this judgment . . . Without making this examination, which the most ordinary care required, plaintiff made the loan, and accepted its mortgage. Surely equity will not reward such negligence by applying the doctrine of subrogation in favor of the negligent party. To do so would encourage carelessness in taking such securities . . ." Jones, supra at 103-104,399 N.E.2d 1215. *Page 1