MIDLAND TITLE SECURITY, INC., Appellant,

v.

CARLSON et al., Appellees.

[Cite as *Midland Title Sec., Inc. v. Carlson*, 171 Ohio App.3d 678, 2007-Ohio-1980.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 88116.

Decided April 26, 2007.

McFadden, Freeburg & Sandhu Co., L.P.A., Donald P. McFadden, and David T. Brady, for appellant.

Joseph A. Carbone, for appellee Ray Carlson.

Nash and Nash and Carl Nash, for appellee Carssie Ann Carlson, deceased.

Ronald B. Greenspan, for appellee.

John Revis, for the estate of Carssie Ann Carlson.

---

CHRISTINE T. McMONAGLE, Judge.

{¶ 1} Plaintiff-appellant, Midland Title Security, Inc., appeals the judgment of the common pleas court overruling its objections to a magistrate's decision and adopting the decision of the magistrate. The trial court's judgment in favor of defendant-appellee Carssie Ann Carlson [1] on Midland's claims against her and its dismissal as moot of Carssie Ann's third-party complaint against Midland for indemnity are found to be in error, as will be explained below.

{¶ 2} This action to foreclose on property located at 5823 Richmond Road in Solon, Ohio was initiated in 1992 by Society National Bank against Steven Gellen and Ray and Carssie Ann Carlson. The record demonstrates that this home was previously owned by defendants Ray and Carssie Ann Carlson while they were husband and wife. In March 1986, the Carlsons borrowed $232,000 from Ameritrust Company, N.A.; both signed the promissory note on the loan, and repayment of the loan was secured by a mortgage on the property. The couple separated in 1987, and later that year, Carssie Ann moved from the marital home. Gellen purchased the house from the Carlsons in 1988 by general warranty deed. Pursuant to the general warranty deed, the Carlsons warranted that the property was free and clear of all encumbrances.

{¶ 3} The escrow agent and title insurer for the 1988 sale of the home to Gellen was Midland Title. In error, Midland Title issued a check in the amount of $183,848.98, dated April 8, 1988, to Carssie Ann or Ray and Carssie Ann Carlson.[2] Midland issued the check without satisfying the valid mortgage originally held by Ameritrust, which by that time had become Society National Bank. Midland did not properly deliver the proceeds of the sale of the home to Ameritrust in order to satisfy the note and retire the mortgage. The check was mailed to the home, where Ray was still living at the time, and was received by him. Ray forged

---

1. Carssie Ann is deceased, and her estate, the executor/administrator of her estate, and her unknown heirs have been substituted in her place for this appeal.

2. Carssie Ann's estate contends that the check was issued in her name; Ray contends that the check was issued in both of their names; the magistrate found that the check was issued in Carssie Ann's name. The trial exhibits, of which the check apparently was one, were not made a part of the record for our review. That notwithstanding, it is undisputed that Ray fraudulently deposited the check and that Carssie Ann did not share in the proceeds.

Carssie Ann's signature on the check and deposited it in a Merrill Lynch cash-management account in mid-April 1988.[3]

{¶ 4} Ray continued making the regular monthly payments on the note and mortgage until 1992. Thereafter, the note and mortgage went into default, causing Society National Bank to initiate foreclosure proceedings on the property, naming the Carlsons and Gellen as defendants.

{¶ 5} Gellen notified Midland of the suit, and Midland paid Society National Bank approximately $199,000 in January 1994 in order to release the mortgage. At Midland's request, Society National Bank furnished Midland with an assignment of the Carlson note, which was delivered by letter dated January 5, 1994.

{¶ 6} The magistrate's decision, adopted by the court, found that Midland was not entitled to judgment against Carssie Ann on its claims of breach of warranty of title, assignment of judgment, conversion, or unjust enrichment.

{¶ 7} "The decision to adopt, reject or modify a referee's report will not be reversed on appeal unless the decision was an abuse of discretion, which has been defined as ' "* * * more than error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." ' " *Wade v. Wade* (1996), 113 Ohio App.3d 414, 419, 680 N.E.2d 1305, quoting *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 450 N.E.2d 1140. An appellate court determines whether a trial court abused its discretion by adopting a magistrate's report in light of the evidence before the trial court. *Proctor v. Proctor* (1988), 48 Ohio App.3d 55, 60, 548 N.E.2d 287.

{¶ 8} In its first assignment of error, Midland contends that the trial court erred in finding that no claims of Ameritrust existed to assign at some later time. In addressing Midland's claims based on the assignment by Society, the trial court found, in part, that the claims of Society were dismissed on January 24, 1994. Midland argues, however, that because the claims were dismissed without prejudice, Society National Bank and its assignees, of which it is one, had the right to refile a claim on the note. We agree.

{¶ 9} A dismissal without prejudice relieves the court of all jurisdiction over the matter, and the action is treated as though it had never been commenced. See *Zimmie v. Zimmie* (1984), 11 Ohio St.3d 94, 95, 11 OBR 396, 464 N.E.2d 142; *DeVille Photography, Inc. v. Bowers* (1959), 169 Ohio St. 267, 272, 8 O.O.2d 281, 159 N.E.2d 443; *Conley v. Jenkins* (1991), 77 Ohio App.3d 511, 517,

---

**3.** Ray was prosecuted for the forgery, pleaded guilty to unauthorized use of the check, and was ordered to make restitution to Midland. As of March 1999, Ray had repaid Midland $24,000. He subsequently filed for bankruptcy, and during those proceedings, Midland was awarded a judgment against him in the amount of $199,000.

602 N.E.2d 1187. Hence, because the dismissal was without prejudice, Midland was not foreclosed from bringing its action. Accordingly, the trial court erred by finding that no claims existed to assign based on the dismissal, and Midland's first assignment of error is sustained.

{¶ 10} The next three assignments of error are interrelated and will be addressed together. For its second assignment of error, Midland contends that the trial court erred in finding that the note had been satisfied. For its third assignment of error, Midland argues that the trial court erred in finding that it did not pay consideration for the assignment of the note. In its fourth assignment of error, Midland contends that it was subrogated to the rights of Gellen to maintain an action on the general warranty deed through which he took title to the property.

{¶ 11} In regard to the issue of whether the note had been satisfied, Midland argues that its January 1994 payment of approximately $199,000 "was not intended to satisfy the debt owed by Carlson, but was consideration for the assignment of the note from Ameritrust." The estate, on the other hand, argues that there was no assignment, and the payment was indeed to satisfy the debt owed by the Carlsons.

{¶ 12} Initially, it is helpful to the resolution of this case to set forth the distinction between a note and mortgage. The promissory note is the primary evidence of the debt, and the mortgage on the real estate is merely the security for the payment of the note. *Washer v. Tontar* (1934), 128 Ohio St. 111, 113, 190 N.E. 231. It is further helpful to understand that "[t]he obligation of the maker of the note is the full amount found to be due thereon. The fact that there is security therefor takes away no right or remedy of the holder of the note, nor does it affect the liability of the maker of the note." Id., citing *Simon v. Union Trust Co.* (1933), 126 Ohio St. 346, 185 N.E. 425.

{¶ 13} It is undisputed in this case that both Carssie Ann and Ray signed the note. Thus, both are liable on the note. The payment made by Midland was not to discharge the Carlsons of their liability; Midland had no obligation to do so. Rather, the payment was to protect Gellen's interest, i.e., to stop the foreclosure of the house. More specifically, the policy Midland issued to Gellen did not provide that it was obligated to pay the note or mortgage on behalf of the Carlsons or Gellen. Instead, the policy provided that Midland was responsible for any loss Gellen incurred. Gellen would have incurred a loss if Ameritrust had foreclosed on the property and he was divested of title.

{¶ 14} Having said that, we next resolve the question of whether the note was assigned to Midland. In order to be binding, a contract must be supported by consideration. *Lake Land Employment Group of Akron v. Colum-*

*ber* (2004), 101 Ohio St.3d 242, 804 N.E.2d 27. Consideration may consist of either a detriment to the promisee or a benefit to the promisor. Id. at 247, 804 N.E.2d 27. A benefit may consist of some right, interest, or profit accruing to the promisor, while a detriment may consist of some forbearance, loss or responsibility given, suffered, or undertaken by the promisee. Id.

{¶ 15} A promissory note, as a negotiable instrument, is freely transferable and provides the holder with the right to demand money or bring suit to recover money on the note. See R.C. 1303.22(A) and 1303.31. In this case, Midland issued a check to Ameritrust in the amount of $199,121.23. In exchange for the check, Midland received a letter from Ameritrust stating that the Carlson note was assigned to it. Thus, Ameritrust transferred the right to payments over time of the Carlsons' debt in exchange for the sum of money paid by Midland, and Ameritrust received the benefit of immediate payment. Thus, the consideration for the assignment was valid.

{¶ 16} As relates to the subrogation issue, we initially examine the various types of subrogation that exist under Ohio law, as set forth by the Supreme Court of Ohio:

{¶ 17} "In Ohio, there are three distinct kinds of subrogation: legal, statutory, and conventional. Legal subrogation arises by operation of law and applies when one person is subrogated to certain rights of another so that the person is substituted in the place of the other and succeeds to the rights of the other person. *State v. Jones* (1980), 61 Ohio St.2d 99, 100–101, 15 O.O.3d 132, 133, 399 N.E.2d 1215, 1216–1217. Statutory subrogation is a right that exists only against a wrongdoer. Conventional subrogation is premised on the contractual obligations of the parties, either express or implied. The focus of conventional subrogation is the agreement of the parties. Id. at 101, 15 O.O.3d at 133, 399 N.E.2d at 1217." *Blue Cross & Blue Shield of Ohio v. Hrenko* (1995), 72 Ohio St.3d 120, 121, 647 N.E.2d 1358.

{¶ 18} Here, the title insurance policy Midland issued to Gellen contained a subrogation provision, which provided:

{¶ 19} "Whenever the Company shall have settled a claim under this policy, all right of subrogation shall vest in the Company unaffected by any act of the insured claimant. The Company shall be subrogated to and be entitled to all rights and remedies which such insured claimant would have had against any person or property in respect to such claim had this policy not been issued, and if requested by the Company, such insured claimant shall transfer to the Company all rights and remedies against any person or property necessary in order to perfect such right of subrogation and shall permit the Company to use the name

of such insured claimant in any transaction or litigation involving rights or remedies."

{¶ 20} Thus, the subrogation in this case was conventional, as it arose from the title insurance contract between Midland and Gellen. If Midland had not paid Ameritrust, Gellen would have retained his right to file claims against the Carlsons under the general warranty deed. In turn, Midland had a right of subrogation to Gellen's claims pursuant to the title insurance policy.

{¶ 21} In addressing the issue of subrogation, the trial court found that Midland's negligence in issuing the check to the Carlsons precluded it from asserting subrogation. In so holding, the court relied on *Union Trust Co. v. Lessovitz* (1931), 51 Ohio App. 69, 4 O.O. 499, 199 N.E. 614, in which this court held, "[T]he negligence of the party seeking subrogation does not defeat him so long as the burden of the lienholder resisting the substitution is not increased." Id. at 73–74, 4 O.O. 499, 199 N.E. 614. *Union Trust,* however, concerned a case of equitable subrogation, while this case relates to conventional subrogation. Equitable defenses are not available to challenge conventional subrogation. *Ohio Dept. of Taxation v. Jones* (1980), 61 Ohio St.2d 99, 101, 15 O.O.3d 132, 399 N.E.2d 1215. Therefore, the trial court's reliance on *Union Trust* was misplaced.

{¶ 22} Moreover, the trial court's reliance on the "innocent party rule" was also misplaced. Specifically, the innocent-party rule is based upon the principle of equitable estoppel. *DeLorean Cadillac, Inc. v. Weaver* (Oct. 2, 1997), Cuyahoga App. No. 71827, 1997 WL 607533. Under the doctrine of equitable estoppel, relief is precluded where one party induces another to believe certain facts are true and the other party changes his position in reasonable reliance to his detriment on those facts. *Bank One Trust Co., N.A. v. LaCour* (1999), 131 Ohio App.3d 48, 55, 721 N.E.2d 491. Here, Carssie Ann was not induced to believe that certain facts were true, nor did she change her position in reasonable reliance on any facts. Thus, the doctrine of equitable estoppel is inapplicable to this case, and the innocent-party rule should not have been applied.

{¶ 23} Based on the above, Midland's second, third, and fourth assignments of error have merit and are sustained.

{¶ 24} In its fifth assignment of error, Midland argues that the trial court erred by finding that Carssie Ann was not unjustly enriched. Given our resolution of Midland's first four assignments of error, the fifth assignment of error is moot, and we decline to address it. See App.R. 12(A)(1)(c).

{¶ 25} Finally, the trial court rendered Carssie Ann's third-party complaint for indemnity against Midland moot because it rendered judgment in her favor. Given our reversal of the trial court's judgment, however, upon remand, Carssie

Ann's third-party complaint should be reactivated. Further, the trial court should substitute the appropriate parties in place of Carssie Ann.

Judgment reversed
and cause remanded.

DYKE, J., concurs separately.

CALABRESE JR., P.J., concurs.

ANN DYKE, J., concurring.

{¶ 26} I concur in the judgment but write separately to state more clearly that reversing the judgment of the trial court is no reflection on the ultimate merits of Carssie Ann Carlson's third-party complaint against Midland Title for indemnity. There is no dispute that Midland Title mistakenly forwarded the sale proceeds to Ray Carlson without satisfying the valid mortgage originally held by Ameritrust, which had become Society National Bank. Consequently, Carssie Ann still has the opportunity to maintain her claim against Midland Title.

CALABRESE JR., P.J., concurs in the foregoing opinion.