ZUKERMAN, DAIKER & LEAR CO., L.P.A., Appellee,

v.

SIGNER et al.; Luft et al., Appellants.

[Cite as *Zukerman, Daiker & Lear Co., L.P.A. v. Signer*, 186 Ohio App.3d 686, 2009-Ohio-968.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 91892.

Decided March 5, 2009.

David G. Finley and Diana Verhas, for appellee.

Carlisle, McNellie, Rini, Kramer & Ulrich Co., L.P.A., Richard L. McNellie, and Eric T. Deighton, for appellants.

Mary J. Boyle, Judge.

{¶ 1} Defendants-appellants, Barbara J. and Alfred Luft ("the Lufts"), appeal from a judgment of the trial court adopting a magistrate's decision in its entirety and granting judgment accordingly. For the following reasons, we affirm.

{¶ 2} In March 2007, plaintiff-appellee, Zukerman, Daiker & Lear Co., L.P.A. ("Zukerman"), filed a complaint for foreclosure and other equitable relief against defendants Julie Luft Signer ("Signer"), the Lufts, Georgetown Condominium Association ("Georgetown"), and the Cuyahoga County Treasurer ("Treasurer"). Zukerman alleged that it had obtained a judgment against Signer for the sum of $29,791.03 plus interest and costs, and that it was the holder of a judgment lien for such amount, which was attached to Signer's property located at 15 Brandywine Square, Euclid, Ohio. It demanded that the property be foreclosed and that

all liens be marshalled and their priority determined according to law. Zuker-man later amended its complaint and added Rotatori, Bender, Gragel, Stoper & Alexander Co., L.P.A. ("Rotatori"), Citibank NA (South Dakota) ("Citibank"), and Standard & Corsi Co., L.P.A. ("Corsi") as new party defendants. Corsi, Rotatori, the Treasurer, Georgetown, and the Lufts filed answers and cross-claims.

{¶ 3} The case was referred to a magistrate, who held a bench trial on March 3, 2008. The magistrate made the following findings of fact:

{¶ 4} "1. * * * Prior to July of 1996, the property was owned by defendant Alfred Luft and his wife, defendant Barbara J. Luft. In July of 1996, Alfred Luft and Barbara Luft executed a deed transferring Alfred Luft's one-half interest in the subject property to their daughter, defendant Julie Luft Signer * * *.

{¶ 5} "2. On August 1, 2002, Julie Luft Signer executed a promissory note payable to Alfred Luft in the sum of $35,000.00 with interest at the rate of 8.00% per annum (hereinafter 'the Luft promissory note'). The interest and principal were due and payable on or before July 31, 2007. This note recites that it was given 'for value received.'

{¶ 6} "3. To secure this promissory note, on September 19, 2002, Julie Luft Signer granted a mortgage in the sum of $35,000.00 in favor of Alfred Luft encumbering her one-half interest in the subject property (hereinafter 'the Luft mortgage'). This mortgage was filed for record on September 20, 2002, and recorded at AFN 200209201284.

{¶ 7} "4. Alfred Luft and Barbara Luft testified that the note and mortgage were given in consideration for payment of Julie Luft Signer's debts and living expenses incurred after her separation from her husband and as part of her divorce proceeding. With the exception of cancelled checks totaling $700.00, neither Alfred Luft nor Barbara Luft could produce any receipts or cancelled checks reflecting the payment of these expenses.

{¶ 8} "5. Alfred Luft and Barbara Luft further testified that they never received any payment related to the Luft mortgage or promissory note. Further, Alfred Luft has never made a demand for payment of the Luft promissory note.

{¶ 9} "6. The subject property has been leased from time to time during the relevant time period. An undisclosed amount of rental payments have been made to Barbara Luft. The Lufts claim that these payments were not applied to the Luft promissory note.

{¶ 10} "7. In early August 2005, a check in the sum of $54,053.13 made payable to Julie Luft Signer was endorsed to Barbara Luft and cashed by Barbara Luft on August 10, 2005. The Lufts claim that this sum was not applied to the Luft promissory note.

{¶ 11} "8.  Defendant [Rotatori] holds a judgment lien on the one-half interest of Julie Luft Signer.  This lien was filed for record on November 19, 2004, and recorded at JL–04–227691 of the County's Judgment Lien Docket.  There is due on this lien the sum of $33,895.28 plus interest thereon at the rate of 10.00% per annum from May 21, 2007.

{¶ 12} "9.  Plaintiff [Zukerman] holds a judgment lien on the one-half interest of Julie Luft Signer.  This lien was filed for record on February 14, 2006, and recorded at JL–06–256861 of the County's Judgment Lien Docket.  There is due on this lien the sum of $29,791.03 plus interest thereon at the rate of 6.00% per annum from January 26, 2006, plus costs of $25.00.

{¶ 13} "10.  Defendant [Corsi] holds a judgment lien on the one-half interest of Julie Luft Signer.  The lien was filed for record on October 23, 2006, and recorded at JL–06–276788 of the County's Judgment Lien Docket.  There is due on this lien the sum of $7,717.86 plus interest thereon at the rate of 10.00% per annum from June 7, 2006, plus costs of $106.00."

{¶ 14} The magistrate held that "a party asserting a lien in response to a marshalling of liens claim has the burden of proving the balance due on his lien at trial" and determined that "Alfred Luft failed to meet that burden in this case." The magistrate determined that because Alfred Luft failed to prove a balance due on his note and mortgage, he was not entitled to payment upon the marshalling of liens.

{¶ 15} The Lufts raised timely objections to the magistrate's decision based upon Civ.R. 53.  The trial court overruled the Lufts' objections and adopted the magistrate's decision in its entirety.  The trial court ordered that Signer's one-half interest in the property be foreclosed and that the funds first be distributed to the Treasurer and then to the lienholders who met their burden:  Rotatori, Zukerman, and Corsi.  It is from this judgment that the Lufts appeal, raising four assignments of error for our review:

{¶ 16} "[1.]  The trial court abused its discretion by depriving Defendant/Appellant, Alfred Luft of a valuable interest in property without due process of law.

{¶ 17} "[2.]  The trial court abused its discretion placing the burden of proof upon Defendant/Appellant, Alfred Luft, to prove that his note, which is secured by his mortgage, was not satisfied by payment.

{¶ 18} "[3.]  The trial court abused its discretion in its determination that monies given to Defendant/Appellant, Barbara J. Luft, by Defendant Julie Luft Signer should have been credited as payment of the note held by Defendant/Appellant, Alfred Luft.

{¶ 19} "[4.] The trial court abused its discretion in its finding that the testimony of Defendants/Appellants Barbara J. Luft and Alfred Luft was unsupported."

Civ.R. 53 and Transcript or Affidavit

{¶ 20} The record reveals that, while the Lufts timely objected to the magistrate's decision, they did not provide a transcript for the trial court's review. There is no indication that the Lufts requested a transcript be prepared for the trial court, nor is there any indication that the Lufts submitted an affidavit regarding the evidence upon which they based their objections or that they sought leave to supplement their objections with a transcript or affidavit at a later date.

{¶ 21} Under Civ.R. 53, any "objection to a factual finding, whether or not specifically designated as a finding of fact under Civ.R. 53(D)(3)(a)(ii), shall be supported by a transcript of all the evidence submitted to the magistrate relevant to that finding or an affidavit of that evidence if a transcript is not available." Civ.R. 53(D)(3)(b)(iii).

{¶ 22} In *State ex rel. Duncan v. Chippewa Twp. Trustees* (1995), 73 Ohio St.3d 728, 654 N.E.2d 1254, the Ohio Supreme Court set forth our standard of review in this situation: "When a party objecting to a referee's report has failed to provide the trial court with the evidence and documents by which the court could make a finding independent of the report, appellate review of the court's findings is limited to whether the trial court abused its discretion in adopting the referee's report, and the appellate court is precluded from considering the transcript of the hearing submitted with the appellate record. * * * In other words, an appeal under these circumstances can be reviewed by the appellate court to determine whether the trial court's application of the law to its factual findings constituted an abuse of discretion." Id. at 730, 654 N.E.2d 1254. The term "abuse of discretion" connotes more than an error in law or judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable. *Berk v. Matthews* (1990), 53 Ohio St.3d 161, 169, 559 N.E.2d 1301.

{¶ 23} A review of the record on appeal reveals that a transcript was filed with the trial court on August 12, 2008, after the trial court adopted and approved the magistrate's decision and after the Lufts filed their notice of appeal to this court. The transcript was filed in this court on August 25, 2008. Thus, to the extent that the Lufts rely on testimony from the hearing that was not before the trial court in ruling on the Lufts' objections to the magistrate's decision, their arguments must fail. *Duncan*, 73 Ohio St.3d at 730, 654 N.E.2d 1254; see also *State v. Ishmail* (1978), 54 Ohio St.2d 402, 8 O.O.3d 405, 377 N.E.2d 500, paragraph one of the syllabus.

{¶ 24} Nonetheless, the Lufts' main contention is that the trial court abused its discretion in adopting the magistrate's *legal* conclusion; namely, that in a marshalling-of-liens case, the burden of proving the balance due on the lien is on the party asserting the lien. For the following reasons, we disagree.

## Burden of Proof

{¶ 25} In their first assignment of error, the Lufts argue that Alfred Luft had no notice or "reason to believe that he would be forced to bear the burden of proving the negative proposition that payments were not made." In their second assignment of error, they argue that the trial court erred by placing the burden of payment on Alfred Luft. Since these two assignments are interrelated, we will address them together.

{¶ 26} Regarding the burden-of-proof issue, the magistrate found that "[t]here is a surprising lack of authority concerning the burden of proof in a marshalling-of-liens claim." The magistrate explained that "[o]rdinarily, one who asserts a claim has the burden of proving that claim." But he pointed out that "[m]arshalling of liens, however, is a unique claim. A marshalling-of-liens claim is asserted by a lien claimant in a foreclosure case whereby all other lien claimants must assert their interests in the property or be barred from asserting them in the future. The Court then has the duty to ascertain the nature and extent of all liens and pay them out of the proceeds of sheriff's sale according to their priority. * * * Thus, marshalling of liens is a claim by the plaintiff against a creditor defendant upon which *the creditor defendant,* not the plaintiff, receives payment." (Emphasis sic.)

{¶ 27} Describing the difficult concept, the magistrate explained: "Placing the burden of proof on the parties contesting the balance due on a lien could conceivably result in an absurd situation where two conflicting burdens of proof exist regarding payment of liens in foreclosure cases. A lien claimant who has asserted a cross-claim for foreclosure or money judgment on his mortgage and promissory note may be denied recovery on this cross-claim because of a failure to introduce sufficient evidence to prove an outstanding balance. Nevertheless, if the burden of proof regarding a marshalling-of-liens claim is on those contesting the balance due on a lien, this same lienholder may be paid on his lien pursuant to the marshalling-of-liens claim because adverse lien claimants are unable to provide evidence that the balance was paid. In other words, the cross-claiming lienholder loses because he cannot meet his burden of establishing the lien amount but, at the same time, wins because adverse lien claimants cannot meet their burden contesting this lien in regard to the marshalling-of-liens claim."

{¶ 28} The magistrate concluded that "[t]he present case further illustrates the sensibility of placing the burden of proof regarding the balance due on the party

seeking payment. If the burden of proof is on the other lien claimants, shoddy or incomplete bookkeeping could preclude other lien claimants from contesting the amount due on the lien simply because no evidence exists upon which to base a challenge. Accordingly, the magistrate finds that a party asserting a lien in response to a marshalling-of-liens claim has the burden of proving the balance due on his lien at trial. Alfred Luft has failed to meet that burden."

{¶ 29} The Lufts argue that the magistrate's reasoning was flawed and that the magistrate placed the burden on the wrong party. Relying on *Midland Title Security, Inc. v. Carlson*, 171 Ohio App.3d 678, 2007-Ohio-1980, 872 N.E.2d 968, they contend that Alfred Luft's note and the mortgage securing the note were stipulated to, and that was sufficient to prove the existence of the debt. In *Midland*, this court distinguished between a note and a mortgage, stating that a "promissory note is the primary evidence of the debt, and the mortgage on the real estate is merely the security for the payment of the note." The similarities of the facts and law in *Midland* to the issues in this case, however, end there. Therefore, we find *Midland* to be completely inapposite to this case.

{¶ 30} The Lufts further maintain that the burden of proof of payment should be on the party asserting that payment was made and thus, "the parties arrayed against Alfred in this case would bear the burden of proving payment of the note." In support of this argument, the Lufts rely heavily on a 1934 case, *Buck v. Coblentz* (App.1934), 18 Ohio Law Abs. 1. After reviewing *Buck*, however, we find the Lufts' reliance on this case to be misplaced.

{¶ 31} In *Buck*, the plaintiff brought an action upon a promissory note against the *maker of the note*. The defendant-maker denied the execution of the note, claimed that the signature on the note was forged, and averred that there was no consideration for the note. The trial court held that the plaintiff was entitled to the full amount of the note, plus interest. The appellate court affirmed, holding in part that "a promissory note regular on its face when introduced into evidence for all purposes, establishes a prima facie case against the person whose name appears on it as maker unless under the pleadings there is an issue as to the genuineness of the signature." Thus, in *Buck*, it was an action *against* a maker of a note upon a *demand for payment* of the note. In such a case, the burden is not upon the holder of the note to prove lack of payment, but on the maker to plead and prove payment as an affirmative defense. See Civ.R. 8(C).

{¶ 32} The reasoning in *Buck*, however, does not extend to the facts of the case sub judice—a marshalling-of-liens claim with competing liens. Here, the holder of the note and mortgage securing the note is not demanding payment from the maker of the note—in this case his daughter—but rather, is attempting to show that his daughter never paid him in order to preclude a forced sale of the

property securing the note.[1] The Lufts argue that they could never prove a negative payment. They maintain that the court should take into account that they are an elderly couple who do not keep accounting records such as a business would.

{¶ 33} If this court were to adopt the Lufts' reasoning, however, then *family members could loan money to each other to avoid paying other debts or to avoid foreclosure of property.* It is our view that if family members loan money to each other with the expectation that the loan will be repaid, then it should be incumbent upon the holder of the note to keep such accounting records.

{¶ 34} If a bank filed a foreclosure against a debtor claiming that the debtor had never made payments on his or her mortgage, but did not show proof of want of payments or balance due, courts would not foreclose on the debtor's property. In fact, the same burden that the trial court placed on the Lufts in this case also applied to the other creditor-defendants. If Rotatori or Corsi had not proven what balance was due upon their liens, they would not have been entitled to receive distribution of funds upon sale of the property (just as Citibank and Georgetown were not entitled to distribution of funds because they did not meet their burden). We see no reason why the same standard should not be applied to intrafamily loans.

{¶ 35} Accordingly, we find no abuse of discretion in the trial court's adoption of the magistrate's well-reasoned decision. The Lufts' first and second assignments of error are overruled.

{¶ 36} In their third assignment of error, the Lufts argue that the trial court erred when it applied the $54,053.13 that was received by Barbara Luft from Signer to Alfred Luft's $35,000 note. The Lufts maintain that "the defense of payment was never pleaded by any party," and that "there was no evidence whatsoever to indicate that Alfred, the payee on this note, received a penny of the money from Signer's check to Barbara, the rents or any other source."

{¶ 37} According to the magistrate's findings, the Lufts could not explain what the $54,053.13 Barbara received from Signer was used for, except to say that it was used for other debts Signer owed them, not the $35,000 note. The magistrate found the Lufts' testimony was self-serving, not supported by any documentary evidence, and lacked credibility. Moreover, the magistrate never "applied" the $54,053.13 to Alfred's note, but stated that the $54,053.13, in addition to other unexplained sums received by Barbara Luft, may have "satisfied the obligation of the Luft note and mortgage." This was just one factor, out of many, that led the

---

1. The Lufts filed a cross-claim against Rotatori, but not Signer. They attempted to do so on February 29, 2008, but the magistrate denied them leave to amend their complaint because trial was set for March 3, 2008.

magistrate to conclude that the Lufts did not meet their burden of showing that there was a balance remaining on the note.

{¶ 38} Accordingly, the Lufts' third assignment of error is overruled.

{¶ 39} In their fourth assignment of error, the Lufts challenge the trial court's adoption of the magistrate's credibility assessments and factual findings. As we stated previously, the Lufts failed to timely file a transcript of the proceedings with the trial court and, thus, the trial court was required to accept the magistrate's credibility assessments and factual findings. Therefore, the Lufts' fourth assignment of error is overruled.

{¶ 40} Having overruled the Lufts' four assignments of error, we affirm the judgment of the Cuyahoga County Court of Common Pleas.

COLLEEN CONWAY, A.J., and SEAN C. GALLAGHER, J., concur.