[Cite as *Luper Neidenthal & Logan v. Albany Station, L.L.C.*, 2014-Ohio-2906.]

# IN THE COURT OF APPEALS OF OHIO

## TENTH APPELLATE DISTRICT

Luper Neidenthal & Logan, A
Legal Professional Association,

        Plaintiff-Appellee,

v.

Albany Station, LLC et al.,

        Defendants-Appellees,

Tolliver & Curl Paving Contractors, Inc.,

        Defendant-Appellant.

:
:
:
:
:
:
:
:
:
:

No. 13AP-651
(C.P.C. No. 12CVE-291)

(REGULAR CALENDAR)

---

# D E C I S I O N

## Rendered on June 30, 2014

---

*Luper Neidenthal & Logan, Melissa A. Izenson*, and *Frederick M. Luper*, for plaintiff-appellee.

*Gallagher & Kavinsky, LPA*, and *Michael R. Szolosi, Jr.*, for defendant-appellee JCCN Investments, LP.

*Marc K. Fagin*, for appellant.

---

    APPEAL from the Franklin County Court of Common Pleas.

T. BRYANT, J.

    {¶ 1} Defendant-appellant, Tolliver & Curl Paving Contractors, Inc., appeals from a judgment of the Franklin County Court of Common Pleas in a foreclosure action brought by plaintiff-appellee, Luper Neidenthal & Logan, A Legal Professional Association. We previously denied a motion to dismiss the appeal for lack of a final

appealable order, and the matter is now before us on the merits. *Luper Neidenthal & Logan v. Albany Station, LLC*, 10th Dist. No. 13AP-651 (Nov. 5, 2013) (memorandum decision).

{¶ 2} Luper Neidenthal began this case with a complaint in foreclosure against Albany Station, LLC, an entity formed for the purpose of undertaking a never completed residential condominium project. The complaint alleged that, in order to secure an account owed for legal services, Luper Neidenthal obtained from Albany Station a mortgage lien on certain parcels of development property. The complaint also named as defendants several competing lienholders. Defendant-appellee JCCN Investments, LP, was an initial investor in the Albany Station project and held a judgment lien against the property based upon a cognovit note given by Albany Station. Defendant-appellee Lawrence J. Gross, an attorney, also held a judgment lien. Tolliver, which had performed paving work on the defunct project, held a judgment lien after pursuing collection of the unpaid paving contract. In addition, the Franklin County Treasurer held a presumed lien for unpaid taxes.

{¶ 3} Albany Station did not file an answer. Tolliver filed an answer contesting the validity of the legal fees underlying the Luper Neidenthal lien and otherwise contesting the priority of liens on the subject property. On January 22, 2013, pursuant to a partial agreement between the parties, the trial court entered a decree of foreclosure granting default judgment against Albany Station in favor of Luper Neidenthal, ordering sale of the property, and reserving the order of priority of all liens for later determination. Litigation continued among the lienholders concerning the validity and priority of the parties' respective liens. On June 13, 2013, the trial court disposed of cross-motions for summary judgment. The court granted summary judgment in favor of Luper Neidenthal and JCCN, denied summary judgment sought by Tolliver, and set lien priority in strict compliance with the chronology of lien filings by the various parties: first in priority, the statutorily superior lien held by the Franklin County Treasurer for unpaid taxes, second in priority, Luper Neidenthal's recorded mortgage of December 10, 2008 with a principal amount of $20,000, third in priority, a certificate of judgment lien filed by JCCN in the amount of $185,356 plus interest, recorded on February 17, 2010, fourth in priority, Tolliver's certificate of judgment lien in the amount of $13,668.19 plus interest, filed on

February 9, 2011, and finally, a certificate of judgment lien filed by Gross on December 15, 2011 in the amount of $40,000 plus interest.

{¶ 4} Tolliver has appealed and brings the following two assignments of error:

> [I.] THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT TO APPELLEES, LUPER NEIDENTHAL & LOGAN, LPA AND JCCN INVESTMENTS, LP.
>
> [II.] THE TRIAL COURT ERRED BY FAILING TO GRANT SUMMARY JUDGMENT TO APPELLANT, TOLLIVER & CURL PAVING CONTRACTORS, INC.

{¶ 5} Both of Tolliver's assignments of error consider the grant or denial of the parties' cross-motions for summary judgment in the trial court. We consider the assignments of error together under the standard of review in such cases. Civ.R. 56(C) provides that summary judgment may be granted only when there remains no genuine issue of material fact, the moving party is entitled to judgment as a matter of law, and reasonable minds can come to but one conclusion, that conclusion being adverse to the party opposing the motion. *Tokles & Son, Inc. v. Midwestern Indemn. Co.*, 65 Ohio St.3d 621, 629 (1992), citing *Harless v. Willis Day Warehousing Co.*, 54 Ohio St.2d 64 (1978). Additionally, a moving party cannot discharge its burden under Civ.R. 56 simply by making conclusory assertions that the non-moving party has no evidence to prove its case. *Dresher v. Burt*, 75 Ohio St.3d 280, 293 (1996). Rather, the moving party must point to some evidence that affirmatively demonstrates that the non-moving party has no evidence to support each element of the stated claims. *Id.* An appellate court's review of summary judgment is de novo. *Koos v. Cent. Ohio Cellular, Inc.*, 94 Ohio App.3d 579, 588 (8th Dist.1994); *Bard v. Soc. Natl. Bank,* 10th Dist. No. 97APE11-1497 (Sept. 10, 1998). Thus, we conduct an independent review of the record and stand in the shoes of the trial court. *Jones v. Shelly Co.*, 106 Ohio App.3d 440, 445 (5th Dist.1995). As such, we have the authority to overrule a trial court's judgment if the record does not support any of the grounds raised by the movant, even if the trial court failed to consider those grounds. *Bard.*

{¶ 6} Tolliver's first argument with respect to both assignments of error is that the trial court failed to issue a written opinion presenting the legal analysis and undisputed

material facts of the case and that we must, at a minimum, reverse and remand with a mandate for the trial court to issue an explanatory decision providing the rationale for summary judgment. However, since our review is de novo, the absence of an explanatory decision from the trial court neither impedes our review nor precludes affirmance of the trial court because we may ultimately do so on grounds other than those relied on by the court. *See, generally, Fred Sigel Co., L.P.A. v. Arter & Hadden*, 8th Dist. No. 71440 (July 31, 1997), citing *Brown v. Scioto Cty. Bd. of Commrs.*, 87 Ohio App.3d 704, 711 (4th Dist.1993).

{¶ 7} Tolliver next argues that it may invoke the doctrine of equitable subrogation in order to improve its standing among the competing lienholders. While the doctrine of equitable subrogation does serve under some circumstances to reshuffle the relative priority of lienholders, it is not applicable on the present facts.

{¶ 8} Pursuant to R.C. 5301.23(A), the general rule of priority among lienholders is that of "first in time, first in right." The first mortgage recorded, therefore, shall have preference over subsequently recorded mortgages in chronological order. Under this rule, Tolliver stands third in line among recorded liens and fourth when considering the statutorily superior tax lien. Equitable subrogation stands as a narrow exception to the strict chronological precedence imposed by statute.

{¶ 9} The doctrine of equitable subrogation " 'arises by operation of law when one having a liability or right * * * in the premises pays a debt due by another under such circumstances that he is in equity entitled to the security or obligation held by the creditor whom he has paid.' " *State Dept. of Taxation v. Jones*, 61 Ohio St.2d 99, 102 (1980), quoting *Fed. Union Life Ins. Co. v. Deitsch*, 127 Ohio St. 505, 510 (1934). The doctrine typically applies to improve the lien precedence of a subsequent lender who paid off an existing first mortgage and, thus, can equitably step into the shoes of that original primary lender. *See, generally, Washington Mut. Bank v. Loveland*, 10th Dist. No. 04AP-920, 2005-Ohio-1542; *Bank One Columbus, NA v. Jude*, 10th Dist. No. 02AP-1266, 2003-Ohio-3343.

{¶ 10} The present facts do not allow application of the doctrine of equitable subrogation. There is no assertion or evidence that Tolliver paid a debt initially owed to a

lienholder with higher precedence and could equitably step into such a lienholder's shoes. This is not an equitable subrogation case.

{¶ 11} Tolliver next argues that it may contest the validity of debts owed by Albany Station that underlie the liens held by the two senior lienholders, JCCN and Luper Neidenthal, and that there remains a genuine issue of material fact as to the validity of those debts and the liens they support. The trial court in effect abrogated the discussion on this question when it held that Tolliver lacked any standing whatsoever to challenge the validity of these debts because Tolliver was not a party to the financial transactions or instruments that formed the basis for these, and Albany Station had through default conceded the validity of the debts. For this proposition, the court cited our decision in *LSF6 Mercury REO Invests. Trust Series 2008-1 v. Locke*, 10th Dist. No. 11AP-757, 2012-Ohio-4499, *appeal not accepted*, 134 Ohio St.3d 1470, 2013-Ohio-553.

{¶ 12} *Locke* is in fact not applicable to the present facts, both on its face and because we subsequently took the opportunity to severely limit the impact of the holding in that case. *See Bank of Am. v. Pasqualone*, 10th Dist. No. 13AP-87, 2013-Ohio-5795.

{¶ 13} *Locke* concerned an attempt by a mortgage borrower to contest the assignment of his note from the original lender to a successor creditor, who then brought a foreclosure action against the borrower. We held that "because the debtor is not a party to the *assignment* of the mortgage, [the debtor] lacks standing to challenge its validity." (Emphasis added.) *Id.* at ¶ 28; *see also Deutsche Bank Natl. Trust. Co. v. Whiteman*, 10th Dist. No. 12AP-536, 2013-Ohio-1636; *JPMorgan Chase Bank, N.A. v. Romine*, 10th Dist. No. 13AP-58, 2013-Ohio-4212, ¶ 13. On its face, therefore, *Locke* does not concern a challenge to the validity of an underlying debt, but only the debtor's standing to attack the validity of a subsequent assignment of the creditor's rights. Moreover, in *Pasqualone*, we explicitly limited *Locke* and held that when defending a mortgage foreclosure action "a debtor may challenge the assignment of a note (by negotiation or transfer) if such challenge fits the criteria of a denial, defense or claim in recoupment as outlined in R.C. 1303.36 or 1303.35." *Pasqualone* at ¶ 35. Even when broadly read, *Locke* would not apply to the present facts and even less so in light of the limited reading of *Locke* imposed in *Pasqualone*.

{¶ 14} Even in the absence of an absolute bar, pursuant to *Locke*, against any attempted attack on the validity of the competing liens, Ohio law places severe restrictions upon Tolliver's efforts to do so. Because the liens of the two superior lienholders are founded upon obligations of somewhat differing nature, we will address the law governing each in turn.

{¶ 15} Tolliver's attack on the validity of JCCN's lien represents a collateral attack upon the cognovit note judgment underlying the lien. A collateral attack is an attempt to defeat the operation of a prior judgment brought in a later proceeding where some new right derived from the judgment is involved. *Black v. Aristech Chem. Co.*, 4th Dist. No. 07CA3155, 2008-Ohio-7038, ¶ 14. The law of Ohio strongly disfavors collateral attacks upon a final judgment; collateral attack is not inherently improper, but is strongly disfavored, as direct appeals are the primary way to challenge a judgment. *Ohio Pyro, Inc. v. Ohio Dept. of Commerce*, 115 Ohio St.3d 375, 2007-Ohio-5024, ¶ 23; *Coe v. Erb*, 59 Ohio St. 259, 271 (1898); *Deutsche Bank Natl. Trust Co. v. Boswell*, 192 Ohio App.3d 374, 2011-Ohio-673, ¶ 24 (1st Dist.) "[T]here is a firm and longstanding principle that final judgments are meant to be just that—final." *Ohio Pyro* at ¶ 22, citing *Kingsborough v. Tousley*, 56 Ohio St. 450, 458 (1897). "[A] judgment is considered 'valid' (even if it might perhaps have been flawed in its resolution of the merits of the case) and is generally not subject to collateral attack" if the judgment was not procured by fraud and the issuing court had jurisdiction. *Id.* at ¶ 25. "[A] collateral attack on a judgment is really an attack on the integrity of the judgment rather than its merits." *Mickey v. Rokakis*, 8th Dist. No. 97053, 2012-Ohio-273, ¶ 9, citing *Ohio Pyro*.

{¶ 16} Nonetheless, strangers to a judgment may collaterally attack that judgment based upon fraud or want of jurisdiction. *Ohio Pyro* at ¶ 19, 23. In a proceeding where a new right is based upon operation of the former judgment, not only the parties to the original action but others affected by application of the judgment have standing to bring a collateral attack on these very limited grounds. *Black* at ¶ 15, citing *Horn v. Childers*, 116 Ohio App. 175, 179 (4th Dist.1959). In the present case, Tolliver's rights as a lienholder are affected by the judgment invoked by JCCN, and Tolliver has standing to collaterally attack that judgment.

{¶ 17} Tolliver asserts that, as an initial investor in the development project, JCCN should be treated as an equity holder rather than holder of a note because otherwise Albany Station would have been almost entirely uncapitalized. For this proposition, Tolliver relies on bankruptcy cases addressing the relative standing of creditors to a bankruptcy estate. *See, e.g., In re Shubh Hotels Pittsburgh LLC*, 476 B.R. 181 (Bankr. W.D.Pa.2012) (analyzing factors under which lenders may be reclassified as equity investors and subordinated to other creditors). While we do not reject out of hand the possibility that such bankruptcy rules might be applied by analogy to reorder competing mortgage liens, we find that in the present case Tolliver presents no evidence that supports the existence of fraud on the part of JCCN in obtaining its judgment, nor that the investment structure of Albany Station amounted to fraud. The collateral attack upon JCCN's judgment therefore fails, and the trial court did not err in finding that there remained no genuine issue of material fact as to the validity of JCCN's lien priority.

{¶ 18} With respect to Luper Neidenthal's lien based upon a statement of account, Tolliver asserts that summary judgment was improper because Tolliver pointed to, inter alia, evidence of billing practices that indicated that much of the legal work underlying Luper Neidenthal's bills was performed not on behalf of Albany Station but on behalf of that company's two principals personally. Moreover, Tolliver asserts some of this work was performed either prior to the time when Albany Station became a *de jure* entity or after the time when Albany Station ceased commercial activity and had any need for legal services.

{¶ 19} In an action to marshal liens, the creditor bears the burden of demonstrating that the account is owed and has not been paid. *Zukerman, Daiker & Lear Co., L.P.A. v. Signer*, 186 Ohio App.3d 686, 2009-Ohio-968, ¶ 34 (8th Dist.). Other creditors are thereby given the opportunity to contest competing liens and assert their superior rights to the collateral even where the primary obligor does not contest a particular debt in order to favor that creditor. *Id.* In *Zukerman*, for example, a mortgage lien was based on a debt owed to a family member, and competing lienholders disputed that it was valid or unpaid. While the present case is not a statutory action to marshal liens, as was the case in *Zukerman*, the same considerations apply to allow lienholders to

contest the primacy of a superior lien that is allegedly the result of a collusive or fraudulent obligation.

{¶ 20} With its initial motion for summary judgment, Luper Neidenthal submitted a statement of account showing that by 2010 Luper Neidenthal had written off legal fees in excess of the $20,000 amount secured by the mortgage. Frederick M. Luper, a principal with the firm, submitted an affidavit regarding the nature of the services provided to Albany Station. Subsequently, the trial court permitted Luper Neidenthal to supplement the evidence considered in support of summary judgment with certain redacted client invoices and the affidavit of Melissa A. Izenson, an attorney employed by the firm, authenticating the account records. Tolliver could answer only with speculative assertions regarding the timing of the legal services at issue and the extent to which they might not have benefitted a moribund enterprise. Tolliver is not entitled to the inference that an insolvent company has no need for legal counsel, nor that pre-incorporation fees incurred by the promoters of a business entity may never be attributed to the entity once it is formally created. The trial court, therefore, did not err in granting summary judgment in favor of Luper Niedenthal.

{¶ 21} In accordance with the foregoing, the trial court did not err in granting summary judgment in favor of appellees Luper Neidenthal and JCCN. Appellant Tolliver & Curl Paving Contractors, Inc.'s two assignments of error are overruled, and the judgment of the Franklin County Court of Common Pleas is affirmed.

*Judgment affirmed.*

KLATT and CONNOR, JJ., concur.

T. BRYANT, J., retired of the Third Appellate District, assigned to active duty under authority of the Ohio Constitution, Article IV, Section 6(C).

_____